## 71027. TAYLOR v. THE STATE.
(340 SE2d 263)

BEASLEY, Judge.

Lewis Taylor appeals from his convictions of three counts of aggravated assault (OCGA § 16-5-21), two counts of criminal trespass (OCGA § 16-7-21), one count of rape (OCGA § 16-6-1) and one count of armed robbery (OCGA § 16-8-41) and from the fact that he was sentenced separately as to some of the counts.

1. Taylor asserts that the trial court erred in denying his plea in abatement which was premised upon his argument that the indictment against him should have been quashed and dismissed upon his showing that he was denied the right to present witnesses at his preliminary hearing; he wanted to call three of the state's witnesses.

Assuming in the absence of a transcript that Taylor was not permitted to present witnesses at the committal hearing, and even if such denial was error, it would not help appellant here.

"The duty of a court of inquiry is simply to determine whether there is sufficient reason to suspect the guilt of the accused and to require him to appear and answer before the court competent to try him. Whenever such probable cause exists, it is the duty of the court to commit." OCGA § 17-7-23 (a); *Neal v. State*, 160 Ga. App. 498, 499 (1) (287 SE2d 399) (1981). Moreover, it is well settled that errors in a

preliminary hearing will not in and of themselves afford grounds for relief when the defendant is subsequently indicted by a grand jury. *Walker v. State*, 144 Ga. App. 838 (1) (242 SE2d 753) (1978). He has shown no harm, as he must. *Barksdale v. State*, 161 Ga. App. 155, 157 (2) (291 SE2d 18) (1982).

2. Appellant contends that the verdicts of guilty are not supported by the evidence, that the state failed as a matter of law to prove the charges beyond a reasonable doubt. The record shows otherwise.

Taylor was found guilty of the aggravated assault and armed robbery of Robert and Tracey Shirley and of the criminal trespass of the Shirleys' apartment. He was also found guilty of the rape and aggravated assault of Carol Burton and of the criminal trespass of her apartment a short distance from and on the same street as the Shirleys' apartment.

Taking the evidence in a light most favorable to the verdict, *Benson v. State*, 172 Ga. App. 135, 137 (322 SE2d 339) (1984), there was evidence at trial that at approximately 3:00 a.m. on July 22, 1984, Mr. and Mrs. Shirley were asleep in the bedroom of their apartment when Mrs. Shirley was awakened to find a man standing in the corner of the bedroom; her scream awakened Mr. Shirley. The intruder swiftly came over to Mr. Shirley's side of the bed, put what appeared to the Shirleys to be a handgun to the side of Mr. Shirley's face and told them both that if they did not cooperate he would blow their heads off. The man then forced Mr. Shirley to turn over onto his stomach and put a pillow over his head and then asked the Shirleys for their money. Mrs. Shirley tried to explain to the intruder that her husband had not been paid, but the man would not accept this. Then Mrs. Shirley remembered her wallet was in the kitchen and told him so. The intruder, holding the gun and Mrs. Shirley's arm, escorted her into the kitchen to get the money. The man was upset about the Shirleys' lack of available funds ($9) and after he and Mrs. Shirley had come back into the bedroom and Mrs. Shirley had gotten back into her side of the bed, he demanded more money and used profanity when he realized they had none. As Mrs. Shirley was lying in the bed on her side, the man began to unzip his pants and she told him that he would have to blow her head off before he touched her. Mr. Shirley, still lying in the bed with the pillow over his head, began screaming and the intruder became very angry. The Shirleys had been storing a friend's rifle underneath their bed and about this time the man spied the rifle, picked it up and pointed it at Mrs. Shirley. She was not unduly alarmed because she was fairly certain that it was not loaded. The intruder leaned over and touched the back of her head, and she kicked and turned around rapidly, like she was going to fight him, grabbed the rifle away from him, pointed it at him, and turned

to her husband and told him she had the gun. The man ran out, she chased after him down the hallway, and by the time she got to the kitchen, he was out the front door.

The man fled the Shirleys' apartment with the money from Mrs. Shirley's wallet as well as with the small gun he had used to threaten the Shirleys. Later, while relating the episode for the police, Mr. Shirley realized that the small gun used and taken by the intruder was actually a starter pistol which Mr. Shirley used on his job and which he had placed in the drawer of the lamp table, next to the side of the bed.

During the episode, the intruder had struck both the Shirleys several times. He hit Mr. Shirley with the pistol and with his fist and Shirley testified that he remembered being struck twice on the head and that he sustained several scratches on his back. Mrs. Shirley testified that her husband had a big scratch on his face from where the man had initially put the pistol to Mr. Shirley's face, that she had been hit on the head a couple of times as well with the pistol, and that she had received several scratches from her tussle with the intruder over the rifle.

Mrs. Shirley further testified that she had no problem seeing in her bedroom, even without the bedroom light being turned on, because the room was well lit from the lights of a car lot located behind their apartment. She identified the intruder as being a black man, approximately six feet tall and on that night, "[h]e had grey slacks on. He was dressed really sharp. He had a white shirt on that had kind of a grey thing on the front, either it was a vest or something like that, and he had, he was very clean-cut. He was dressed very sharp." When asked what color clothing the intruder had on, Mr. Shirley responded, "I saw grey pants, white shirt and greyish-grey vest-like." At trial, the defendant identified himself as being twenty one years old and six feet, two inches tall.

A police officer testified that a little after 3:00 a.m. on July 22, while he was working a part-time job in the vicinity of the Shirleys' apartment and prior to his having any knowledge of the Shirleys' mishap, he was seated in his unit talking with another off-duty officer when he observed a tall (more than six foot) black man run by. The man was coming from the direction of the Shirleys' apartment and headed towards the location of Ms. Burton's apartment, which was within walking distance. The officer testified further that the man had on a white and grey shirt. In the courtroom, the officer identified the defendant as the man he had seen running that night.

As to the aggravated assault and rape of Carol Burton and the criminal trespass of her apartment, the evidence at trial showed that during the early morning hours of July 22, Ms. Burton was at home in bed asleep when she woke up and heard something at the window in

her bedroom. She looked and saw a man standing there, pointing a gun at her. The man asked Burton whether there was anyone else in the home with her and when she responded that there was no one else there, he climbed in the window; he then took Burton from room to room to be sure that she was alone. The man then brought her back into the bedroom, disrobed, pushed her down on the bed and had sexual intercourse with her. He also put a pillow over Burton's face, apparently to avoid identification. During this entire time, the intruder retained the gun in his hand. The victim then told the intruder she needed a glass of water and the man accompanied her to the bathroom. They then went back to the bedroom, the man pushed her back down on the bed, laid his arm over her and went to sleep. She lay there a minute, tried to get up after she thought he was asleep, but he woke up, so she waited until he went to sleep again and then got up and went to the apartment across from hers where the neighbors called the police. When the police arrived they found Taylor lying across Burton's bed, wearing only his socks and with a pistol in his hand. The defendant's clothes thrown on the floor by the side of the bed were identified by the officer as the same clothes worn by the runner he had seen earlier. They matched the description of clothing given by the Shirleys, and the gun found in the defendant's hand was later identified as Mr. Shirley's starter pistol.

A forensic serologist testified that the rape analysis which had been performed on Burton showed the presence of spermatozoa. In addition, part of the pubic combing from the victim was similar in all identifiable characteristics to the sample from Taylor.

There was ample evidence to support Taylor's convictions. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Appellant contends that the trial court erred in sentencing him for both the aggravated assault of Robert Shirley and the armed robbery of the Shirleys in that there was factual merger which is double jeopardy prohibited by OCGA § 16-1-7 (a) (1) and by Art. I, Sec. I, Par. XVIII of the 1983 Georgia Constitution.

Count one of the indictment charged aggravated assault by pointing a pistol, a deadly weapon, at Robert Shirley. Count eight charged armed robbery by taking property of value of Robert and Tracey Shirley, $9, from their immediate presence by use of an offensive weapon, a pistol with intent to commit theft.

Appellant contends that the facts required to prove the aggravated assault on Robert Shirley were identical to the facts required to show the armed robbery of the Shirleys. However, the crime of aggravated assault (OCGA §§ 16-5-21 (a) (2) and 16-5-20 (a) (2)) was completed before Taylor robbed the victims in that he pointed the pistol at him right at the outset, before the trip to the kitchen and the subsequent robbery. Had he left (without Mr. Shirley's pistol) after com-

mitting the aggravated assault with the pistol on Mr. Shirley, he would be guilty only of that crime against the person, having used the pistol to assault Mr. Shirley. But he also used it to effect a robbery of both Shirleys, for the money. The indictment bears this out; it did not charge Taylor with assault on Mr. Shirley with the specific intent to rob but rather with the general intent to assault by the offensive use of the pistol and the jury was authorized to consider as to the aggravated assault only a general intent to do the act. The indictment charged armed robbery with the specific intent to commit a theft. The two acts were in fact separate though in close succession.

Applying first the statute, which is the proper order when both statute and constitution are invoked, see *State v. Jewett*, 146 Vt. 221 (500 A2d 233) (1985), we find no violation of Taylor's protection from double jeopardy in his having been convicted of and punished for both the aggravated assault and armed robbery of Mr. Shirley. See, e.g., *Lambert v. State*, 157 Ga. App. 275 (277 SE2d 66) (1981); *State v. Hightower*, 252 Ga. 220, 223 (312 SE2d 610) (1984); *Miller v. State*, 174 Ga. App. 42, 44 (5), 45 (329 SE2d 252) (1985).

Going next to the constitution, appellant fails to make any argument in support of the constitutional claim. Merely intoning the citation to the portion of the state constitution which prohibits double jeopardy fails to provide us with any basis for concluding that this right has been violated. Inasmuch as he does not address it in argument, the invocation of the state constitution is considered abandoned. *Mitchell v. State*, 173 Ga. App. 560 (1) (327 SE2d 537) (1985).

4. Taylor also raises the same double jeopardy argument with regard to his sentences for both the aggravated assault and the rape of Carol Burton;[1] he maintains that counts four and five of the indictment involved the same transactions.

Count four charged aggravated assault on Carol Burton with a pistol. Count five charged rape of Carol Burton.

Here, the two offenses against the person of Carol Burton were separate and distinct acts as a matter of fact. Physical contact is not required for the crime of aggravated assault. *Tuggle v. State*, 145 Ga. App. 603, 604 (1) (244 SE2d 131) (1978). If Taylor had departed from Burton's apartment prior to the forcible sexual penetration of her, he still would have been guilty of the aggravated assault of Ms. Burton because he had pointed the pistol at her through the window and held it while he led her from room to room before the rape.

---

[1] Appellant's enumerations of error complain only of error in *sentencing* (which, as a matter of fact, were concurrent as to all counts). In his brief he attempts to enlarge it by complaining of error in the *convictions*. Actually, the statute he cites prohibits *conviction* of more than one crime, although *prosecution* may be for each. OCGA § 16-1-7 (a) (1).

5. Though Taylor was convicted of the offenses of criminal trespass of both the Shirleys' and Ms. Burton's apartment, he was prosecuted for the burglary of each. He argues that inasmuch as the jury found only criminal trespass, this is inconsistent and repugnant to the guilty verdicts for armed robbery of the Shirleys and the rape of Carol Burton. He reasons that since the jury did not find him guilty of entering the Shirley apartment with intent to commit a felony, armed robbery, nor of entering the Burton residence with intent to commit a felony, rape, then by finding him guilty only of criminal trespass the jury could not properly find he had the requisite intent, in each case, so as to be guilty of armed robbery and rape. Burglary requires entry "with the intent to commit a felony or theft therein." OCGA § 16-7-1.

Appellant claims that this is the kind of irreconcilable conflict which must lead the court to avoid the jury's verdict of necessity and in spite of the otherwise unassailable character of jury verdicts. OCGA § 17-9-2; *Jackson v. State*, 230 Ga. 640, 641 (198 SE2d 666) (1973). The determinative factor in deciding whether the verdicts are repugnant is whether the acquittal of one charge necessarily includes a finding against a fact that is essential to conviction for the other charge. If so, the evidence is then insufficient to support a verdict of guilty in the convicted charge. *Shehee v. State*, 167 Ga. App. 542, 544 (2) (307 SE2d 54) (1983); *Martin v. State*, 157 Ga. App. 304, 305 (3) (277 SE2d 300) (1981).

The verdicts here are not inconsistent at all. What appellant overlooks is the rapidity with which the human mind can, and often does, change its intention. The jury's verdicts merely demonstrate that it believed that appellant did not have the intent to commit armed robbery as charged when he, without a gun, entered the Shirleys' apartment but only acquired such intent after gaining entry to the home and finding the pistol. Likewise, the jury determined that appellant formed the intent to commit rape only after entry into Burton's apartment, or at least that the evidence did not show beyond a reasonable doubt that he had the intent to rape when he entered.

Giving the verdicts a reasonable construction and intendment, we find no necessity to avoid them.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED JANUARY 31, 1986.

*Harry J. Fox, Jr.*, for appellant.
*G. Theron Finlayson, District Attorney, Edward D. Lukemire,*

*Assistant District Attorney*, for appellee.