73232. BROWN v. THE STATE.
(353 SE2d 572)

POPE, Judge.

Nathaniel Brown was indicted on seven counts of violating the Georgia Controlled Substances Act and was convicted on two of the counts, possession of more than 28 grams of cocaine (Count 4) and possession of less than 28 grams of cocaine (Count 6). He enumerates as error the trial court's denial of his motion to suppress and the trial court's denial of his demurrer.

The facts relating to defendant's conviction are as follows: Pursuant to a search warrant, certain officers of the Warner Robins police department were searching the residence of one Leroy Cumbie for

narcotics. At the time of the search, three vehicles were parked on the premises. A radio check revealed that one of the vehicles, a van, belonged to defendant.

Officer Harvey Brown testified that he had just finished searching a small outbuilding located at the rear of the house when he noticed a small blue Nissan being driven into the yard. Pursuant to established procedure, he approached the vehicle to ascertain the identity of the occupants, to see why they were there, and to advise them as to what was going on. As he approached the vehicle, the passenger, Mr. Rouland, got out, at which point Officer Brown identified himself. Officer Brown then requested defendant, who was still sitting in the Nissan, to exit the vehicle. Officer Brown testified that he had to repeat his request three times before defendant exited the car. At that point, Officer Brown showed defendant his badge and identified himself. Officer Brown then requested that Rouland and defendant step around so he could talk to them. Rouland began to walk away and Officer Brown asked him a couple of times to stay with him. After a couple of minutes, defendant came around the car, as requested. Officer Brown testified that "[b]ecause of the . . . way they were acting, they were kind of refusing to be together, so to speak, I asked both of them to step inside with me. I did not feel comfortable; I felt like it was a dangerous situation because of fact of continual repeating orders for them to stay with me and refusing to do so."

At that point the three of them continued to walk towards the house. Rouland continued to walk ahead of them and Officer Brown asked him to slow down. Rouland reached the door first and proceeded to open it, and Officer Brown called out to identify them to the officers inside. After Officer Brown briefly explained the circumstances, Officer Capps began a weapons patdown of Rouland. A small handgun was found during this search. While this search was going on, the officers asked defendant to have a seat. Officer Brown testified that as defendant sat down he removed his shirt, which was unbuttoned. After Rouland was searched, defendant was patted down and nothing was found on his person. Officer Capps then picked up defendant's shirt, "checked it" and found a package of what appeared to be cocaine (a little over 28 grams) in the pocket of the shirt.

At the time defendant was being searched, Officers Brown and Capps knew that cocaine had also been found in a back bedroom of the house in a small travel bag, but this bag had not yet been identified as belonging to defendant. Officer Shell, who found the cocaine in defendant's bag, testified that at the time he searched the bag, he believed the luggage belonged to Cumbie, because he knew from the ongoing surveillance of the premises that Cumbie had been out of town. Officer Shell also testified that he did not see the identification tag on the luggage with defendant's name on it until after he discov-

ered the cocaine. At the suppression hearing, Ms. Shawn Humphrey of the state crime lab testified that 28.3 grams of cocaine were obtained from the search of defendant, which was not tested for purity, and 55.6 grams was obtained from defendant's luggage, which was found to be 64% pure, netting out 35.6 grams of pure cocaine.

We consider first defendant's motion to suppress evidence.

1. Search of Defendant's Person and Clothing. The State concedes that defendant was not named in the search warrant but argues that the search was nevertheless proper, citing both OCGA § 17-5-28 and probable cause.

(a). OCGA § 17-5-28 provides that "[i]n the execution of the search warrant the officer executing the same may reasonably detain or search any person in the place at the time: (1) To protect himself from attack; or (2) To prevent the disposal or concealment of any instruments, articles, or things particularly described in the search warrant." "[This] statute by necessary implication describes the limited circumstances in which the executing officer may search persons not identified in the warrant incident to a legitimate search of premises." *Wallace v. State*, 131 Ga. App. 204 (205 SE2d 523) (1974).

Subsection 1 of OCGA § 17-5-28 permits "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he had probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 20 LE2d 889) (1968); see *Smith v. State*, 139 Ga. App. 129 (2) (227 SE2d 911) (1976). We find that the testimony of Officer Brown clearly establishes that the officers conducting the search reasonably could have concluded the defendant was armed and dangerous and a pat-down search was authorized under OCGA § 17-5-28 (1).

We must also determine, however, whether the search as actually performed exceeded the permissible scope of the limited pat-down search authorized by that code section. " ' "A frisk involves the patting-down of a person's outer clothing by a police officer . . . Unlike a full search, a frisk is conducted solely for the purpose of insuring the safety of the officer and of others nearby, not to procure evidence for use at a subsequent trial." ' " *Smith* at 132. "The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer. In other words, an extended search, exceeding the purpose of the frisk, would be constitutionally unreasonable, and any evidence thereby obtained

must be excluded. . . In *Terry v. Ohio*, supra, the court's emphasis upon the procedures followed by the officer indicates that a two-step process must ordinarily be followed: (1) The officer must pat down first, and (2) then intrude beneath the surface only if he comes upon something which feels like a weapon." (Citations and punctuation omitted.) Id. at 133; *Wyatt v. State*, 151 Ga. App. 207, 210 (259 SE2d 199) (1979). " ' "An officer who exceeds a pat-down without first discovering an object which feels reasonably like a knife, gun, or club must be able to point to specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down." ' " *Smith* at 133.

Applying these principles to the facts herein, we find the record totally devoid of testimony or facts showing that the searching officer first conducted a tactile and visual search of defendant's shirt and, only then, finding something that felt like a weapon, extended the search into defendant's shirt pocket, where the cocaine was found. Since the weapons search was not "conducted within constitutionally permissible bounds, the seizure of the drugs cannot be justified on this basis." *Smith* at 134; *Wyatt* at 210.

(b). We next consider the applicability of OCGA § 17-5-28 (2). We find that this issue is controlled by *Wallace v. State*, supra, wherein this court held that "[u]nder the facts present here, involving [defendant's] arrival at the [house] while the search was in progress and his being under constant surveillance from the moment of his entry, [OCGA § 17-5-28 (2)] is factually inapplicable. . . ." *Wallace* at 205.

(c). Probable Cause. The State also contends that the search of defendant's person and clothing was authorized because probable cause for a warrantless search existed. We have carefully examined the record and find that at the time the search was conducted, no independent justification for a warrantless search of defendant existed. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment . . . — subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative. The burden is on those seeking the exemption to show the need for it. *Coolidge v. New Hampshire*, 403 U. S. 443, 454-455 (91 SC 2022, 29 LE2d 564) (1971)." (Citation and punctuation omitted.) *State v. Slaughter*, 252 Ga. 435, 436 (315 SE2d 865) (1984). We find that the State has failed to meet its burden of showing that the

warrantless search of defendant was authorized under the above rule.[1] Having rejected, in parts (a) and (b) of this division, the State's arguments that the search of defendant was authorized under the warrant to search Cumbie's residence, we must reverse the trial court's conviction of defendant of the offense of possessing less than 28 grams of cocaine (Count 6 of the indictment).

2. Search of Defendant's Luggage. Defendant's remaining conviction was for possession of the cocaine found in defendant's luggage.

As evidenced by our holding in Division 1, "searches of persons not named in a search warrant but found on the premises to be searched are illegal absent independent justification for a personal search. . . ." *Hayes v. State*, 141 Ga. App. 706, 707 (234 SE2d 360) (1977). In *Hayes*, we examined the question of what constituted a person's "boundaries" for purposes of immunity from search, and expanded that concept to include a suitcase sitting next to the couch on which defendant, a visitor to the searched premises, was sleeping. This determination, however, is factually sensitive. " '(T)he police cannot realistically be expected to avoid searching the property of a mere visitor to the premises unless they are aware of its ownership. Absent a requirement of such awareness, the effective execution of a warrant to search a place would be impossible since the police could never be sure that a plausible repository for items named in the warrant belongs to a resident, and hence is searchable, or to a nonresident, and hence is not searchable. Because of this, without notice of some sort of the ownership of a belonging, the police are entitled to assume that all objects within premises lawfully subject to the search under a warrant are part of those premises for the purpose of executing the warrant.' [Cit.] Whether the police had notice that they were searching the personal effects of a visitor to searched premises must be determined on the facts of each case." (Indention omitted.) *Hayes* at 708-09.

Officer Shell, who conducted the search of defendant's bag, testified that it was a small overnight bag, which was sitting next to a larger suitcase. He testified that the bag, which contained various articles of men's clothing, was open and that he did not move the bag from its original position until after the cocaine had been found and other officers summoned, at which time he moved the bag away from the larger suitcase and saw the name tag on it. Officer Shell also testified that he thought the bag was Cumbie's because he knew from the ongoing surveillance of the premises that Cumbie had been away for a

---

[1] Although the State has not argued that the defendant abandoned his shirt when he removed it, we have examined the record to determine if the warrantless search was authorized under this theory and have concluded that the record fails to support such a finding. Cf. *State v. Howell*, 180 Ga. App. 449 (349 SE2d 476) (1986).

few days. At the time the search was conducted, Cumbie, a Ms. Moore, and Cumbie's young child were the only people present on the premises. We believe that these facts readily distinguish this case from *Hayes* and are consistent with the searching officer's belief that the suitcase was part of the premises lawfully subject to search under the warrant. We hold, therefore, that the trial court did not err in denying defendant's motion to suppress as to the cocaine found in defendant's luggage.

3. Relying on our recent decision in *Blount v. State*, 181 Ga. App. 330 (352 SE2d 220) (1986), defendant argues that the trial court improperly denied his demurrer to the indictment. In *Blount*, and in the case sub judice, at the time of the offense and at the time of the indictment OCGA § 16-13-31 (a) read, in pertinent part, as follows: "Any person who knowingly sells, manufactures, delivers, or brings into this state or who is knowingly in actual possession of 28 grams or more of cocaine or of any mixture containing cocaine, as described in Schedule II, . . . commits the felony offense of trafficking in cocaine. . . ." Prior to defendant's trial and conviction, as was also the case in *Blount*, OCGA § 16-13-31 (a) was repealed and, effective July 1, 1985, a new statute was enacted in its place. Ga. L. 1985, p. 552, § 1. That statute, although substantially the same as the former, did not contain the "or of any mixture" language previously found in that section. In *Blount*, defendants had been indicted with "knowingly and actually possessing 'more than 28 grams of a mixture containing cocaine.'" Id. at 330. Relying on *Robinson v. State*, 256 Ga. 564 (350 SE2d 464) (1986), this court, finding that defendants' conduct was no longer defined by the legislature as trafficking in cocaine, reversed their convictions.

In the present case, however, Count 4 of the indictment (the only charge remaining following our holding in Division 1) charged that defendant did "unlawfully and knowingly possess more than 28 grams of COCAINE, a controlled substance, in violation of the Georgia Controlled Substances Act. . . ." Testimony at trial showed that defendant was in actual possession of 35.6 grams of pure cocaine. Thus defendant here, unlike in *Blount*, was charged and convicted of possessing more than 28 grams of cocaine, not a mixture thereof. We find that defendant's conviction under OCGA § 16-13-31 (a) as it existed at the date of trial was authorized, and the trial court did not err in denying defendant's demurrer.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Carley, J., concur.*

DECIDED JANUARY 26, 1987 —
REHEARINGS DENIED FEBRUARY 6, 1987 AND FEBRUARY 13, 1987 —

*Harry J. Fox*, for appellant.
*G. Theron Finlayson, District Attorney*, for appellee.