A90A0924. McCARR v. THE STATE.
(397 SE2d 711)

BIRDSONG, Judge.

Willie McCarr appeals from his convictions of robbery, obstruction of a law enforcement officer and aggravated assault. *Held*:

1. Appellant contends that the State purposefully exercised its peremptory strikes to systematically exclude blacks from the jury and deny him equal protection of the law as proscribed by *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69). Appellant showed that he was black and that of the panel of 45 prospective jurors, six were black and 39 were white. One black and two whites were struck for cause; thus twelve percent of the potential jurors were black. All of the remaining five black panelists were excluded by the State on peremptory strikes, so that appellant was tried by an all-white jury. The trial court ruled that appellant had made out a prima facie showing of discrimination which placed the burden on the State to put forth non-discriminatory bases for the use of its strikes. See *Gamble v. State*, 257 Ga. 325 (357 SE2d 792). The prosecutor explained that he struck four of the jurors because they had stated that they knew appellant or his family, and one because she "appeared to be of very extremely low intelligence, [bordering] on retarded. . . ."

"These explanations did not require a conclusion of unconstitutionality as to racial neutrality in the exercise of peremptory challenge. *Gamble*, [supra]." *Thompson v. State*, 194 Ga. App. 163-164 (2) (390 SE2d 253). "Even assuming that the State's racially neutral explanation was relatively 'weak,' the trial court was nevertheless authorized to find that appellant's prima facie showing of discrimination had been rebutted. . . . 'The trial court's ruling cannot be found clearly erroneous when the challenge is not based upon racial grounds, but upon the racially-neutral grounds that prosecutors use every day in every court of this (S)tate. (Cits.)' [Cit.]" *Burgess v. State*, 194 Ga. App. 179, 180-181 (390 SE2d 92).

2. Appellant complains that the trial court erred in refusing to charge the jury upon request that he had the right to resist an illegal arrest. The trial court declined to give this charge on the ground that the evidence did not establish that an unlawful arrest took place. Appellant argues that there was no warrant for his arrest and nothing to justify a warrantless arrest.

The trial transcript reveals that the officer who made the alleged illegal arrest was pursuing a vehicle driven by one Scott, a suspected automobile thief, in which appellant was a passenger. Scott drove into a ditch and the two men fled into some woods. While following Scott in the dark through the woods, the officer observed him talking to appellant and a third man in the light from a nearby residence. When another police car drove by all three men ran. Scott and appellant ran

toward the officer, who stepped forward shining his flashlight on them, showing his gun and uniform and identifying himself as a police officer, and requested some identification. Appellant testified that he did not at that time realize that this person was a law enforcement officer and he tried to run away, but when the officer grabbed him they struggled until he knocked the officer down, beat him and took his gun with which he threatened to kill the officer. The officer was able to escape when a bystander warned appellant not to kill him. When the officer saw appellant running in the other direction he retrieved his portable radio and called for back-up assistance. The officer's pistol was not recovered until two weeks later and he did not see appellant again prior to trial.

Under the circumstances, the trial court correctly refused to give the requested charge. Even if the officer's actions could be considered more than a *"Terry* type" stop of the suspects he had been pursuing, there was no *effective* arrest and certainly no *unlawful* arrest within the contemplation of OCGA § 17-4-1. "The rationale of *Terry v. Ohio,* [392 U. S. 1 (88 SC 1868, 20 LE2d 889)] and its progeny allows investigating officers who possess articulable suspicion of criminal activity to detain a suspect for a limited period in order to identify the suspect, frisk him if necessary, and conduct limited questioning. [Cit.] Detention beyond that authorized by *Terry* is an arrest, and, to be constitutional, such an arrest must be supported by probable cause. [Cit.] Probable cause to arrest exists where, based on objective facts and circumstances, a man of reasonable caution would believe that a crime has been or is being committed. *Brinegar v. United States,* 338 U. S. 160, 175-76 (69 SC 1302, 93 LE 1879) (1949)." *Williams v. State,* 251 Ga. 749, 792 (8) (a) (ii) (312 SE2d 40). Absent evidence of an unlawful arrest, appellant's defense became self-defense, which was fully charged by the trial court.

3. Appellant asserts error in the trial court's compelling him to wear prison garb during the trial, thereby diminishing his presumption of innocence. Appellant was dressed in a pair of white, short-sleeved coveralls with the letter "H" stenciled on the breast pocket. The trial court found, and we agree, that there was nothing about this clothing to give the appearance of a prison uniform so as to prejudice appellant's trial. This enumeration is likewise without merit. *Kerr v. State,* 194 Ga. App. 604 (3) (391 SE2d 449).

*Judgment affirmed. Banke, P. J., concurs. Cooper, J., concurs specially.*

Cooper, Judge, concurring specially.

I write only with respect to Division 1 because I believe that the reason proffered by the prosecutor — that the juror "appeared to be of very extremely low intelligence, [bordering] on retarded. . . ." —

seems to be the kind of "whimsical and fanciful" reason that runs afoul of *Batson*. The trial court asked all the jurors to stand and give their names and other general information such as where they lived and worked. In response to this question the juror in question answered: "My name's Elizabeth Whitaker and stay in Guyton, Georgia and I don't work." The record contains no other evidence of words spoken by this juror and it is apparently on those words, together with whatever demeanor the juror had, that the prosecutor based his "observation" that the juror appeared to be of "extremely low intelligence." "It is not obvious from the voir dire examination of this juror that [her] intelligence was extremely low." See *Gamble v. State*, 257 Ga. 325 (6) (357 SE2d 792) (1987). Nor do I feel that appellant should have to show the existence of facts in the record that the juror was not of extremely low intelligence. See *Bess v. State*, 187 Ga. App. 185, 187 (369 SE2d 784) (1988). To place such a burden on defendants would give prosecutors virtually free reign to utilize the proffered explanation in striking jurors. However, because I am mindful of the fact that the trial court's finding of fact must be given great deference and shall not be overturned unless clearly erroneous (*Burgess v. State*, 194 Ga. App. 179, 181 (390 SE2d 92) (1990)) and because the State had only one weak explanation (compare *Gamble v. State*, supra), which is not sufficient under *Batson* to show a systematic exclusion of black jurors, I concur in the majority opinion affirming the trial court.

DECIDED SEPTEMBER 5, 1990 —
REHEARING DENIED OCTOBER 2, 1990 —

*Michael J. Classens,* for appellant.
*J. Lane Johnston, District Attorney*, for appellee.