## A91A1295. HAYES v. THE STATE.
(414 SE2d 321)

CARLEY, Presiding Judge.

After a bench trial, appellant was found guilty of possession of methamphetamine in violation of OCGA § 16-13-30. He appeals from the judgment of conviction and sentence entered on the trial court's finding of guilt.

Appellant enumerates as error only the denial of his motion to suppress. The evidence adduced at the hearing on appellant's motion authorized the trial court to make the following findings of fact: Officers, who were surveilling a certain house prior to executing a search warrant for methamphetamine, observed appellant stop his vehicle in front of the house. Although appellant never exited, his vehicle was close enough for him possibly to have spoken to a person who was on the premises. When appellant drove off, an officer followed with instructions to stop appellant and question him at a distance from the premises. When the officer turned on the blue lights of his patrol car, appellant did not immediately stop. Before appellant did eventually stop, the officer observed that appellant had opened the center console of his vehicle. Because the officer was concerned that appellant may have avoided stopping so as to enable him to retrieve a weapon out of the console, he asked appellant why he had not immediately responded to the blue lights and why he had reached into the console. Appellant responded that he merely had been getting a pack of cigarettes from the console and, in ostensible proof of his explanation, appellant produced a pack of cigarettes from his pocket. The officer nevertheless determined to conduct a pat-down of appellant for weapons. However, when the officer touched the outside of the left pocket of appellant's pants, appellant grabbed the officer's hand and pushed it away and turned his body sideways so as to prevent the officer from making contact with the outside of the pocket. The officer then told appellant to place his hands on the top of the car and, when appellant complied, the officer reached into appellant's pocket. In so doing, the officer had no investigatory purpose, but was merely trying to determine whether appellant was armed. The officer discovered no weapon in appellant's pocket, but did find the contraband which underlay appellant's prosecution.

Appellant was observed when he stopped his vehicle in front of a house where execution of a search warrant was imminent. The warrant had been issued on probable cause to believe that drug activity was being conducted at the house. From the location where he stopped his vehicle, appellant had been close enough to speak to a person who was on the premises. Although this may not have been sufficient to establish probable cause to believe that appellant was actually engaged in the suspected drug activity, it was certainly suffi-

cient to establish an articulable suspicion so as to authorize a brief investigatory stop of appellant. See *Edwards v. State*, 194 Ga. App. 571, 572 (1) (391 SE2d 137) (1990); *Jackson v. State*, 191 Ga. App. 439, 440 (1) (382 SE2d 177) (1989); *Eisenberger v. State*, 177 Ga. App. 673, 674 (2) (340 SE2d 232) (1986).

The officer who effectuated the investigatory stop testified that he suspected that appellant might be armed and, under the circumstances, that suspicion was *not* unreasonable. When he was stopped, appellant was not on foot, but was in his vehicle. The Supreme Court has "recognized that investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." *Michigan v. Long*, 463 U. S. 1032, 1047 (III) (103 SC 3469, 77 LE2d 1201) (1983). Moreover, the stop of appellant was predicated upon a suspicion of his possible involvement in drug activity and, prior to the stop, the officer had observed appellant opening the console of his vehicle. See *United States v. Gilliard*, 847 F2d 21, 25 (7) (1st Cir. 1988) (reasonable suspicion that suspect was armed where he was suspected of involvement with drugs and where officers knew that "firearms are 'tools of the [drug] trade.' ") Appellant would summarily discount the officer's observation that appellant had opened the console, because appellant had ostensibly explained the opening of his console by producing his cigarettes. However, appellant suggests no reason why the officer was constitutionally compelled to accept a suspected drug violator's explanation, and we certainly know of no constitutional provision which would require that the officer stake his life on appellant's explanation rather than upon the officer's own determination of whether appellant was armed. Notwithstanding his "explanation," appellant certainly *could* have secured a weapon from the console and certainly *could* have placed it beneath or behind his cigarettes or in a different pocket entirely.

Accordingly, the officer clearly *was* authorized to conduct a minimally intrusive pat-down to determine whether appellant was armed. The officer attempted to conduct just such a pat-down, but appellant frustrated that effort by grabbing and pushing the officer's hands away and by turning his body sideways to prevent the officer from touching the outside of his pocket. Although appellant had already refused to subject himself to a pat-down, appellant urges that the officer was nevertheless constitutionally limited to engaging only in further attempts to conduct a pat-down of appellant. This is clearly erroneous. Having a reasonable suspicion that appellant might be armed *and* having already been frustrated in his efforts to conduct a minimally intrusive pat-down, the officer was certainly authorized to conclude that it was more "reasonable" for him to reach into appellant's pocket in order to confirm or disprove his suspicions than it was for him to continue to leave himself vulnerable to a possible attack.

*Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968) is not authority for the proposition that an officer who has effectuated an investigatory stop of a potentially armed individual is necessarily limited, under *all* circumstances, to conducting a pat-down. To the contrary, *Terry* merely held that it was not unreasonable for an officer to have conducted a pat-down of a potentially armed suspect who had actually submitted to that procedure. Although *Terry* "itself involved the stop and subsequent patdown search of a person, we were careful to note that '(w)e need not develop at length in this case, however, the limitations which the Fourth Amendment places upon a protective search and seizure for weapons. *These limitations will have to be developed in the concrete factual circumstances of individual cases.'* [Cit.]" (Emphasis supplied.) *Michigan v. Long*, supra at 1047 (III). "In evaluating the validity of an officer's investigative or protective conduct under *Terry*, the '(t)ouchstone of our analysis . . . is always *"the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security."* ' [Cit.]" (Emphasis supplied.) *Michigan v. Long*, supra at 1051 (III). "[A] *Terry* investigation, such as the one that occurred here, involves a police investigation 'at close range,' [cit.], when the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a 'quick decision as to how to protect himself and others from possible danger. . . .' [Cit.] *In such circumstances, we have not required that officers adopt alternative means to ensure their safety in order to avoid the intrusion involved in a Terry encounter."* (Emphasis omitted in part and supplied in part.) *Michigan v. Long*, supra at 1052 (III).

Accordingly, *"Terry* does not limit a weapon search to a so-called pat-down search. Any limited intrusion designed to discover guns, knives, clubs or other instruments of assault [is] permissible. [Cit.] We are of the opinion that[,] under the circumstances[, the officer's act of] reaching into appellant's [left]-hand pocket was not overly intrusive. Appellant's conduct in pushing the officer's hand away when he attempted to pa[t] down the [pocket], and his subsequent conduct in [turning his body sideways], coupled with the fact that [the officer had seen appellant, a suspected drug violator, reach into the console before stepping from the vehicle], would create a reasonable suspicion that appellant was armed." *State v. Warren*, 603 P2d 550, 552 (1) (Ariz. App. 1979). Compare *Brown v. State*, 181 Ga. App. 768, 770 (1a) (353 SE2d 572) (1987) (no evidence that defendant resisted frisk); *Wyatt v. State*, 151 Ga. App. 207, 210 (1a) (259 SE2d 199) (1979) (search of wallet by officer having no reasonable suspicion that defendant was armed); *Smith v. State*, 139 Ga. App. 129, 133 (3) (227 SE2d 911) (1976) (no evidence that defendant resisted frisk). A holding to the contrary would have grave consequences for the safety of

the law enforcement officers of this state. It "would require that police officers, faced with having to make quick determinations about self-protection and the defense of innocent citizens in the area, must also decide instantaneously what 'less intrusive' alternative exists to ensure that any threat presented by the suspect will be neutralized. [Cit.] *For the practical reasons explained in Terry, [cit.], we have not in the past, and [do] not now, require police to adopt alternative measures to avoid a legitimate Terry-type intrusion.*" (Emphasis supplied.) *Michigan v. Long*, supra at 1052 (III), fn. 16. The officer's actions were a proportionate response to those of appellant and, accordingly, the denial of appellant's motion was proper.

*Judgment affirmed. Sognier, C. J., McMurray, P. J., Birdsong, P. J., Pope, Cooper, Andrews, JJ., and Judge Arnold Shulman concur. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

1. By supplemental brief, defendant asserts a violation of his state constitutional rights. It has earlier been observed that the underlying purpose of Georgia's exclusionary rule, OCGA § 17-5-30, may be the protection of the right of privacy. *State v. Johnston*, 160 Ga. App. 71, 73 (286 SE2d 47) (1981), aff'd 249 Ga. 413 (291 SE2d 543) (1982).

Even if a new ground could be raised in a supplemental brief, cf. *Quick v. State*, 166 Ga. App. 492, 493 (1) (304 SE2d 916) (1983), defendant merely cites the constitutional provision, Ga. Const. 1983, Art. I, Sec. I, Par. XIII. He supports it with no argument urging an independent state ground and cites cases dealing only with the federal provisions. Defendant ignores the United States Supreme Court instructions and principles of the federal structure of our government in this regard. *Oregon v. Kennedy*, 456 U. S. 667 (102 SC 2083, 72 LE2d 416) (1982); *Massachusetts v. Upton*, 466 U. S. 727 (104 SC 2085, 80 LE2d 721) (1984), Stevens, J., concurring in the judgment; *Pennzoil Co. v. Texaco*, 481 U. S. 1 (107 SC 1519, 95 LE2d 1) (1987). See *Michigan v. Long*, 463 U. S. 1032 (103 SC 3469, 77 LE2d 1201) (1983). Consequently, we can consider only whether there was a violation of federal constitutional rights and bypass the issues of whether there was violation of state constitutional or statutory law. *Taylor v. State*, 177 Ga. App. 624, 628 (3) (340 SE2d 263) (1986); *Mitchell v. State*, 173 Ga. App. 560 (327 SE2d 537) (1985).

2. United States Supreme Court holdings sculpt out three tiers of police-citizen encounters. See *Allen v. State*, 172 Ga. App. 663, 665 (324 SE2d 521) (1984); *McAdoo v. State*, 164 Ga. App. 23, 26 (1) (295

SE2d 114) (1982). This case encompasses the second type, the *Terry*[1] stop, which "must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." *Tarwid v. State*, 184 Ga. App. 853, 854 (1) (363 SE2d 63) (1987).

Defendant's stop and possible conversation in front of the house about to be searched for a controlled substance constituted a sufficient basis for reasonable suspicion when considered in conjunction with defendant's actions vis-a-vis the console in his vehicle. Thus the initial stop fell within the purview of *Terry*. That decision permits a frisk only if it is "supported by a reasonable belief that [the person is] armed and presently dangerous, a belief which [the United States Supreme Court] has invariably held must form the predicate to a patdown of a person for weapons. *Adams v. Williams*, 407 U. S. 143, 146; *Terry v. Ohio*, supra, at 21-24, 27." *Ybarra v. Illinois*, 444 U. S. 85, 92 (100 SC 338, 62 LE2d 238) (1979). As the Court reiterated in *Ybarra*, supra at 93, "Under [the *Terry*] doctrine a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. See, e.g., *Adams v. Williams*, supra. . . . Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or, indeed, any search whatever for anything but weapons. The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion [of the presence of weapons] directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place."

Unlike *Ybarra*, the State articulated circumstances, including context and the defendant's actions, that would have justified a police officer at the scene in suspecting that Hayes was armed and dangerous. Although the trial court concluded that the rummaging in the console could not assist in supporting such a suspicion because Hayes explained it by producing his cigarettes, the ambiguous rummaging while defendant was evading the officer's blue signal could also have been for the purpose of obtaining and hiding on his person a weapon before he stopped.

Thus the frisk was authorized, and it did not proceed to a search of the pocket before it could be said to have warranted a person of reasonable caution in the belief that the pocket contained a weapon. *Terry*, supra. Because the sole justification for the search is the protection of the police officer, an extended search exceeding the purpose of the search is constitutionally unreasonable. *Wyatt v. State*, 151 Ga. App. 207, 210 (1) (259 SE2d 199) (1979). Ordinarily the officer must

---

[1] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

pat down and then intrude beneath the surface only if he confirms his "reasonable belief or suspicion" by coming upon something which feels like a weapon. *Smith v. State*, 139 Ga. App. 129, 133 (3) (227 SE2d 911) (1976); *Brown v. State*, 181 Ga. App. 768, 770 (1a) (353 SE2d 572) (1987). What is permitted is the use of the tactile sense to give the officer a reasonable belief that a concealed weapon is present. In this case, the act of the defendant interrupted the authorized pat-down.

After his hand was pushed away, the officer did not proceed with the pat-down to ascertain the existence of something which felt like a weapon, although the defendant's hands were on top of the car and were placed back there. Instead, he confirmed that what defendant obviously was hiding was not a weapon by removing the item, which was a plastic bag, from defendant's pocket. The person's evasive movement, to keep what he had hidden from the officer's knowledge, coupled with his earlier activity, constituted a substitute for a pat-down which raises a belief that a weapon is hidden, so as to permit an invasive search. Thus, the officer's action was "within constitutionally permissible bounds." *Brown*, supra at 771. *Terry* is inapplicable to aid an "evidence-gathering function." *Ybarra*, supra at 94.

Whether the circumstances, including defendant's protective movements, gave rise to probable cause to believe that drugs were in the pocket, is not at issue. The officer testified that his purpose for searching the pocket was for weapons so as to assure his safety. According to *Ybarra*, supra at 94-96, a reasonable suspicion or belief that the pocket contained narcotics would not authorize a search. The higher standard of probable cause would be necessary. *Terry* is inapplicable to aid an "evidence-gathering function."

DECIDED DECEMBER 5, 1991.

*William E. Frey*, for appellant.
*Robert E. Keller, District Attorney, Albert B. Collier, Assistant District Attorney*, for appellee.

