A97A0104. THE STATE v. NEWTON.

(489 SE2d 147)

McMURRAY, Presiding Judge.

Defendant Newton is charged by indictment with four violations of the Georgia Controlled Substances Act (three of these offenses are trafficking, possession with intent to distribute, and distribution of the Schedule II controlled substance methamphetamine, as well as possession of hydromorphone, another Schedule II controlled substance), aggravated assault upon a peace officer, and obstruction or hindering a law enforcement officer. The State appeals the grant of defendant's motion to suppress evidence. *Held*:

1. On January 15, 1996, at approximately 6:30 a.m., Douglas County Deputy Sheriff Williams while on routine patrol observed a car stopped in the parking lot of a closed store just off an interstate highway. The vehicle contained a driver and defendant, who was the sole passenger.

The deputy drove up to the vehicle and asked the driver whether there was a problem. The driver advised that they had run out of gas and coasted into the parking lot. After that inquiry, the deputy did not stop the men but withdrew across the road and watched them as they drove immediately to a nearby gas station and convenience store where the driver began pumping gasoline into the car.

The deputy drove in behind the car, put on his blue lights, and approached the driver to ask for identification and proof of insurance. After this was provided, the deputy asked and received consent of the driver to search the car. Meanwhile, defendant, who had entered the convenience store, walked back out, and a second deputy sheriff had arrived at the scene.

Deputy Williams proceeded to attempt to pat down defendant. During this pat-down the officer discovered syringes which defendant explained by stating that he was diabetic. The deputy removed defendant's wallet and found two Georgia driver's licenses under different names but both bearing defendant's photograph. Upon the deputy's discovery of the multiple driver's licenses and some discus-

sion about defendant's identity, defendant bolted and ran. Deputy Williams chased defendant, at times losing sight of him, and finally caught him. The two men fought, and during the course of the fight Deputy Williams was sprayed in the face with pepper spray and defendant received a gunshot wound. After the altercation, contraband was discovered on the ground in the vicinity of the fight.

The superior court determined that Deputy Williams had no articulable suspicion that defendant or the driver of the vehicle had committed any crime, that defendant's conduct in being uncooperative with Deputy Williams did not indicate any threat to the officer, that defendant did not consent to the search of his person, that Deputy Williams exceeded the scope of a *Terry* pat-down (see *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 20 LE2d 889)) when he removed the wallet and looked inside it, and that defendant's flight was in direct response to what the deputy saw inside the wallet. The superior court concluded that all evidence developed from the time of looking inside the wallet be suppressed.

The State argues that the superior court erred in determining that Deputy Williams had insufficient legal grounds to detain and search defendant. The superior court found that the deputy "had no articulable suspicion that the [driver or defendant] had committed any crime." This conclusion was apparently based on the inconsistency between the vehicle occupants' report of running out of gas and their subsequent conduct in driving to the nearby gas station to refuel. The prosecution argues that the vehicle occupants' explanation is inherently suspect since the deputy testified that the motor was running in their car at the time this explanation was proffered. But as defense counsel aptly pointed out during the motion hearing, then why did Deputy Williams not confront the vehicle occupants with this inconsistency? On cross-examination, Deputy Williams stated that even though the motor of the vehicle was running he was letting the driver tell his story and did not raise this question. Nonetheless, these and other issues argued with regard to whether the deputy had articulable suspicion need not be addressed since the superior court presumed in reaching its decision that the deputy had authority to pat down defendant during the consent search of the vehicle. The issue on appeal may be limited to whether the superior court was authorized to conclude that the deputy had exceeded the proper scope of the pat-down search.

A *Terry* pat-down is generally a two-step process. The officer must pat down first and then intrude beneath the surface only if he comes upon something which feels like a weapon. In order to exceed a pat-down without first discovering a weapon, an officer must provide specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which

would feel like the object felt during the pat-down. *Clark v. State*, 208 Ga. App. 896, 899 (2), 900 (432 SE2d 220) (non-precedential); *Brown v. State*, 181 Ga. App. 768, 770 (1) (353 SE2d 572).

More invasive procedures have been approved where an officer has had a reasonable basis for concluding that a suspect was armed or was otherwise a threat to his personal safety. See *Hayes v. State*, 202 Ga. App. 204 (414 SE2d 321). Predicated upon defendant's failure to fully cooperate with the pat-down, the prosecution argues that Deputy Williams was authorized to use the more invasive procedures. The deputy explained that defendant failed to keep his hands up above his head and this rendered the pat-down more difficult to accomplish. The superior court characterized defendant's behavior as "not friendly to the officer" and questioning of the deputy's intrusion upon him. Based upon the deputy's testimony and a videotape of the pat-down, the superior court determined that defendant's response did not represent any threat to Deputy Williams. "On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous. *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990)." *Burse v. State*, 209 Ga. App. 276 (433 SE2d 386). Since the evidence authorized the finding that defendant was non-threatening, the absence of the exigent circumstances identified in *Hayes* precluded the intrusion into defendant's wallet. *Barrett v. State*, 212 Ga. App. 745, 748 (443 SE2d 285); *Wyatt v. State*, 151 Ga. App. 207, 210 (1) (a) (259 SE2d 199). The superior court correctly concluded that the deputy exceeded the proper scope of a *Terry* pat-down.

2. The prosecution contends that defendant lacked standing to contest the seizure of contraband in the wooded area near where the altercation occurred between defendant and the deputy. While the deputy did not observe defendant discarding anything, we cannot agree with the prosecution argument that there is no evidence that defendant threw the contraband down as a direct result of the illegal search by Deputy Williams. The evidence of record while circumstantial certainly suggests this scenario, and this appears to be the view of the evidence embraced by the superior court as trier of fact. Even though defendant had no expectation of privacy in the wooded area, such is not determinative of the matter. The discovery of this contraband being the direct product of the prior unauthorized search of defendant's person, it must be suppressed. Any question of abandonment of the contraband as argued by the State is a factual question of intent which has been resolved in favor of defendant. *Orman v. State*, 207 Ga. App. 671, 672 (1) (428 SE2d 813). See also *State v. Brown*, 198 Ga. App. 239, 240 (401 SE2d 295).

3. The State's reliance upon *California v. Hodari D.*, 499 U. S. 621 (111 SC 1547, 113 LE2d 690) is misplaced. The extremely narrow issue addressed in the *Hodari D.* decision must be noted. The *Hodari D.* case defines when an arrest has occurred. The portion of that opinion referenced by the prosecution illustrates that during the interval of time defendant was fleeing from Deputy Williams, he was neither seized nor under arrest. However, no one has suggested otherwise. The suppression of evidence in the case sub judice is predicated upon a conclusion that the State's seizure of the contraband was the product of the preceding illegal search. In the U. S. Supreme Court case there was no seizure or arrest of the juvenile being pursued prior to abandonment of the contraband and thus no instruction on the issues presented in the case sub judice.

4. *United States v. Bailey*, 691 F2d 1009 (11th Cir.) also offers no support to the prosecution since the portion of the holding in this federal case upon which the prosecution relies is predicated upon the abrogation of the common law rule that one may forcibly resist an illegal arrest, a rule which remains the law of the State of Georgia. *Brooks v. State*, 206 Ga. App. 485, 489 (2) (425 SE2d 911). Thus, in *Bailey* there was no right to resist an initial illegal arrest, resulting in a valid second arrest for resisting the illegal arrest, the second arrest being held to be a proper basis for a search incident to arrest. We would also note that much of the remainder of the *Bailey* opinion is supportive of the judgment entered by the superior court.

Anticipating that we might recognize this distinction between state and federal law, the prosecution maintains that the initial seizure of defendant was not an arrest but merely a *Terry* stop and that while there may be a right to resist an illegal arrest there is no corresponding right to resist a flawed *Terry* stop and frisk. However, the contrary seems to have been held by this Court in *Brooks v. State*, 206 Ga. App. 485, 488-489 (2), supra, where the police officer testified that: "He was not under arrest. No. I just wanted to talk to him." We held that the defendant was entitled to resist since the police lacked probable cause or articulable suspicion. *McCarr v. State*, 197 Ga. App. 124 (2) (397 SE2d 711) is inapposite since it merely holds that the refusal to give a requested jury charge unsupported by any evidence was not error.

5. At the time of the incident at issue there was an outstanding Florida warrant for the arrest of defendant. However, this does not attenuate the taint upon the contraband found near the scene of the altercation between defendant and Deputy Williams since the officers in the case sub judice had no knowledge of the outstanding warrant and did not act in reliance on such information. Compare *Ruffin v. State*, 201 Ga. App. 792 (412 SE2d 850).

6. The superior court did not err in suppressing evidence found

in defendant's residence during the execution of a search warrant. " 'When an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue. . . . If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is ad(missible).' James v. United States, 418 F2d 1150, 1151-1152 (3) (D. C. Cir. 1969); [a]ccord, United States v. Williams, 633 F2d 742, 744 (2) (8th Cir. 1980) and cases cited therein." *Rothfuss v. State*, 160 Ga. App. 863, 864 (1) (288 SE2d 579). The prosecution maintained that even when the evidence discovered at the scene of defendant's altercation with Deputy Williams is excluded, the remaining information provided in the search warrant affidavit is sufficient to establish probable cause. However, we are unable to agree since all that remains is evidence of a single drug purchase from defendant more than a month prior to issuance of the search warrant. The affiant witnessed a methamphetamine purchase by a confidential informant from defendant who made reference to a location in his residence where he kept the contraband. However, we must agree with defendant that this evidence alone is stale and fails to create any inference that the circumstances described still exist. Accord *Duncan v. State*, 213 Ga. App. 394, 395 (1) (444 SE2d 583).

The prosecution maintains that additional information in the affidavit shows an ongoing enterprise involving the sale of illegal drugs so that the passage of time is less significant. *Perkins v. State*, 197 Ga. App. 577, 579 (1) (398 SE2d 702). However, that further information consists of hearsay statements from a confidential informant whose reliability was not established. Nor was any of the information provided by the confidential informant independently confirmed. *Kessler v. State*, 221 Ga. App. 368, 370 (471 SE2d 313); *Caswell v. State*, 219 Ga. App. 787, 788 (466 SE2d 907); *Smith v. State*, 218 Ga. App. 12, 14-15 (460 SE2d 114). The evidence provided by the affidavit was not sufficient to establish probable cause.

*Judgment affirmed. Smith, J., concurs. Beasley, J., concurs specially and in the judgment.*

BEASLEY, Judge, concurring specially.

1. I concur in the ruling in Division 1 because of the law governing pat-downs or "frisks," as established by the United States Supreme Court in *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), and such subsequent cases as *Sibron v. New York*, 392 U. S. 40, 62 (IV) (88 SC 1889, 20 LE2d 917) (1968); *Adams v. Williams*, 407 U. S. 143 (92 SC 1921, 32 LE2d 612) (1972); *Pennsylvania*

*v. Mimms*, 434 U. S. 106, 110 (98 SC 330, 54 LE2d 331) (1977); *Ybarra v. Illinois*, 444 U. S. 85, 92-94 (100 SC 338, 62 LE2d 238) (1979); *Michigan v. Long*, 463 U. S. 1032, 1045 (III) (103 SC 3469, 77 LE2d 1201) (1983).[1]

In *Long*, the Supreme Court repeated the framework in which the validity of the challenged pat-down must be evaluated for Fourth Amendment constitutionality. "[T]he '(t)ouchstone of our analysis . . . is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." ' " (Citations omitted.) *Long*, supra, 463 U. S. at 1051. " '(T)he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " (Citations omitted.) Id. at 1050.

The Court recognized in this and the earlier cases that the need for protection of police justifies protective searches when police have a reasonable belief that the suspect poses a danger, and that roadside encounters between police and suspects are especially hazardous. The belief must be based on " 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." (Citation and footnote omitted.) Id. at 1049. A frisk must be predicated on a reasonable belief that the person to be patted down is armed and presently dangerous. *Ybarra*, supra at 92-94.

Assuming for the moment that Officer Williams reasonably suspected that the two men were engaged in, or were about to be engaged in, criminal activity, as he articulated, and that their behavior created a reasonable belief that one or both men were armed with some sort of weapon and thus presently dangerous, he was not authorized to reach into Newton's pocket, retrieve Newton's wallet, and examine its contents.

The reason the officer gave for the pat-down was that he was about to conduct the search of the automobile, to which driver Cheek had consented, and that "before I search any vehicle or turn my back on anybody that I'm involved with I pat them down for weapons

---

[1] The state constitution is ignored by defendant in pressing his claim of rights violation. His motion to suppress invokes the Fourth and Fourteenth Amendments to the United States Constitution and cursorily "similar provisions of the Georgia Constitution" and unspecified "Georgia law." But he bypasses the nebulously mentioned state constitutional ground in pursuing his position, and the trial court did not rule on it. In consequence, neither can we. See, e.g., *Hayes v. State*, 202 Ga. App. 204, 207 (414 SE2d 321) (1991) (Beasley, J., concurring specially); *Taylor v. State*, 177 Ga. App. 624, 628 (3) (340 SE2d 263) (1986). It is notable that between 1970 and 1988, without even considering the years since then, there were more than 450 state court opinions that took state constitutions beyond the federal guarantee; more than one-third concerned criminal procedure issues. LaFave & Israel, Criminal Procedure, § 210 at 95 (2d ed. 1992).

because in my past experience I've found drivers and passengers of vehicles to have weapons on them — in their wallet. I got razor blades, knives, everything else out of people's wallets, pockets, socks, underwear, and it's my policy before I turn my back and start searching somebody's car I pat whoever comes out of that car or who's in the area down." On cross-examination he further explained that he went into Newton's back pocket and pulled out the wallet because it could have contained a weapon. He said he had gotten Derringers out of wallets before, and a wallet could contain a little knife or razor blades or "anything."

In *Sibron*, the Supreme Court examined the nature and scope of a pat-down and search and pointed out that "[t]he search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault. Only when he discovered such objects did the officer in *Terry* place his hands in the pockets of the men he searched." *Sibron*, supra, 392 U. S. at 65. Such a search must be "reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception — the protection of the officer by disarming a potentially dangerous man." Id. The search "must . . . be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, supra, 392 U. S. at 29. Outside of that, the sanctity of the person against unreasonable intrusions, protected by the Fourth Amendment, is violated.

In *Terry*, the officer felt a gun in the outer pocket of each man's overcoat, which authorized him to reach in and remove what turned out to be revolvers. Id. at 7. In *Terry*, the Court was careful to note that it was not developing the limitations which the Fourth Amendment places on protective seizure and search for weapons; these would have to be developed "in the concrete factual circumstances of individual cases." Id. at 29.

Officer Williams did not feel a weapon. He felt an object, one frequently carried by a man in his pocket, which the officer believed might contain a weapon. The Supreme Court has not extended the search-of-person authority to this degree or level, although in *Long* the Court approved the search of a pouch seen on the seat of a vehicle, which pouch the trial court found could have contained a weapon. *Long*, supra, 463 U. S. at 1036, 1050-1051. This intrusion, the Court held, "was 'strictly circumscribed by the exigencies which justifi(ed) its initiation.' [Cit.]" Id. at 1051. But in this case there were no circumstances which would support a reasonable belief that what the officer felt with his hand contained a weapon. True, it might, and possibly could, contain a very small but potentially lethal weapon. Nevertheless, it was an innocuous and ordinary size common men's

wallet without any bulge or other telltale sign, resting in a commonly located place. The limited authority to intrude beyond the outside of a person's clothing in a frisk, when the police do not yet have probable cause, covers objects which may be weapons but not objects which possibly could contain weapons. If that were the law, then an officer could reach in and retrieve any item which felt like a container, including anybody's wallet, because even a very small container could harbor a razor blade. The officer is authorized only to "conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted." *Ybarra*, supra, 444 U. S. at 93. No circumstances were present which would support a reasonable belief that an object which felt like a wallet contained a concealed weapon, such as evasive actions by defendant demonstrating a desire to keep from the officer's knowledge a hidden weapon. Cf. *Hayes v. State*, supra. See *Wyatt v. State*, 151 Ga. App. 207, 209 (1) (a) (259 SE2d 199) (1979).

The trial court in this case found that the officer had no articulable suspicion of crime, that Newton did not indicate any threat to the officer, and that Newton did not consent to a search of his person. The court concluded that "[t]he officer exceeded the scope of a *Terry* pat-down when he removed the wallet and looked inside it. . . . Even presuming that the officer had authority to pat down Newton during the consent search of the vehicle, that did not include the authority to go into the wallet of the defendant." I do not agree that the undisputed facts fail to show a legitimate suspicion of crime and that they fail to justify the frisk. They do. But I agree that extricating and searching the wallet exceeded Fourth Amendment bounds.

2. As to the other divisions in the majority opinion, I concur only in the judgment.

DECIDED JULY 16, 1997 — 

*David McDade, District Attorney, William H. McClain, Assistant District Attorney*, for appellant.
*Zell & Zell, Glenn Zell*, for appellee.