A08A1605. CANTRELL v. THE STATE.
(673 SE2d 32)

PHIPPS, Judge.

Two police officers conducted a nonconsensual, warrantless search of Damond Cantrell. Even though the trial court found the search to be lacking in probable cause, it denied Cantrell's motion to suppress cocaine found during the search. The court based its decision on Cantrell's waiver of Fourth Amendment rights in a bond order entered in a prior case. Because the officers in this case were not even aware of the bond order, and because the trial court did not follow required procedures in taking judicial notice of it, we reverse.

Cantrell was charged with possession of cocaine, possession of cocaine with intent to distribute, and possession of cocaine with intent to distribute within 1,000 feet of a public housing project. After the trial court denied his motion to suppress, he was found guilty of all charges at a jury trial, although the court merged the simple possession conviction into the possession with intent convictions during sentencing. Following the denial of his motion for new

---

trial, Cantrell appeals.

Consistent with the trial court's findings in the order denying Cantrell's motion to suppress, the state proved the following facts without dispute at the hearing on the motion to suppress and/or at trial.

On March 8, 2007, City of Gainesville Police Officers Jim Von Essen and Darren Vogt were on nightly foot patrol in the vicinity of a government housing project known as Atlanta Street Apartments. The locale is a high crime area in which numerous street-level sales of crack cocaine occur. At approximately 10:30 p.m., the officers saw Cantrell. Due at least in part to his distinctive clothing and hair style, they recognized him from prior instances in which he had fled upon seeing them. On this occasion, he again attempted to elude them, but they went in opposite directions and converged on him.

Von Essen, who had a police dog on a leash, approached Cantrell first. Von Essen testified that Cantrell acted as though he would have fled had it not been for the dog. Von Essen greeted Cantrell in a casual manner by asking "what's up" and then talked to him briefly. During their conversation, Cantrell confirmed, in response to questioning by Von Essen, that he did not live in the housing project. Because there were "no loitering" and "no trespassing" signs posted throughout the property, Von Essen believed that he had cause to arrest Cantrell for a violation of a city ordinance prohibiting loitering. Von Essen also testified that Cantrell appeared very nervous and talked in a mumbling and rambling manner and that, based on his training and experience, he thought that Cantrell appeared to be under the influence of alcohol or drugs. He asked Cantrell whether he had ever been arrested for drug possession. Although Cantrell said no, he indicated that he had been charged with some sort of probation violation.

Shortly after confronting Cantrell, Von Essen turned over questioning of him to Vogt, who had been standing behind Cantrell to provide cover for Von Essen. Vogt testified that while he was standing behind Cantrell, he could smell a very strong odor of burning marijuana emanating from Cantrell. Vogt asked whether Cantrell had any drugs or weapons and asked for consent to search him. After Cantrell refused consent, Von Essen and Vogt decided to search him nonetheless, primarily because he had been loitering in the area and Vogt had smelled marijuana on his person.

Vogt began by searching Cantrell's jacket. Finding no contraband there, Vogt pulled the waistline of Cantrell's pants from the backside in order to expose an area that, in his experience, is a common hiding place for drug dealers' narcotics. When Vogt did so, he saw a plastic baggy protruding from between Cantrell's buttocks. At that point, Cantrell attempted to flee, so the officers subdued him,

wrestled him to the ground, handcuffed him, and retrieved the baggy. In it, they found nine rocks of crack cocaine weighing 1.91 grams.

Vogt then informed Cantrell that he was under arrest for cocaine possession. A decision was made, however, to charge him with possession of the cocaine with intent to distribute, because he was in possession of far more than a normal consumption amount, he had concealed it in a place indicating that he was not possessing it for his personal use, he was not in possession of any smoking devices, he had about $75 in twenty dollar bills and five dollar bills, and he had been loitering in one of the highest drug crime areas in the county.

At the hearing on Cantrell's motion to suppress, the court accepted the officers' testimony as to the occurrences incident to their search of Cantrell, but the court concluded that the officers' observations did not establish probable cause to conduct a full-blown search of him. The court, however, stated that on February 23, 2007, in another criminal case against Cantrell, identified as Case Number 2007-CR-469-C, it had issued a bond order which Cantrell had signed and in which Cantrell had agreed to a waiver of Fourth Amendment rights as a condition of his pretrial release. Over objection by Cantrell, the court announced that it would take judicial notice of the bond order and deny Cantrell's motion to suppress based on the waiver provision in it. At the conclusion of the hearing, the court stated that it had not made the bond order part of the record because it is a public record on file in the clerk's office.

Shortly after the hearing, the court entered a written order denying Cantrell's motion to suppress. In the order, the court stated that the bond order included a provision in which Cantrell had agreed to waive his rights under the Fourth Amendment to searches and seizures, including but not limited to random drug screening, and to be " 'searched by any certified law enforcement officer without any reason, anywhere and anytime.' " The court used the bond order as a basis for finding that Cantrell had waived his Fourth Amendment rights and could not object to the search, even though there is no evidence that the officers searched him with knowledge of the waiver. The court issued a certificate of immediate review for its order denying Cantrell's motion to suppress, but we denied Cantrell's application for interlocutory appeal.

Cantrell contends that, in two ways, the trial court erred in denying his motion to suppress. Cantrell argues that the court failed to follow required procedures in taking judicial notice of the bond order's waiver provision, and that the officers' search of him cannot be justified by a waiver of Fourth Amendment rights of which they were unaware. We find merit in both arguments.

1. "The role of judicial notice is to eliminate formal proof as to: (1) matters of which the general public has common knowledge;

(2) facts which are readily ascertainable by reference to some reliable source, and are beyond dispute; and (3) matters which are within the special province of the judge."[1] *Petkas v. Grizzard*[2] held that a trial court may take judicial notice of records on file in its own court. *NationsBank v. Tucker*[3] held that while the trial court could have taken judicial notice that a document purporting to be the notice required by a Georgia statute was attached to a complaint, whether the notice was sufficient to satisfy the statute was an issue in dispute requiring proof and was thus not a proper matter for judicial notice. After our decision in *Tucker, Graves v. State*[4] held that "if a trial court intends to take judicial notice of any fact, it must first announce its intention to do so on the record, and afford the parties an opportunity to be heard regarding whether judicial notice should be taken."[5] *Graves* identified as one of the reasons for requiring such a rule that, otherwise, the accused is deprived of an opportunity to challenge whether the trial court has properly taken judicial notice of the fact at issue.

"[I]n Georgia we have held that bonds in both felony and misdemeanor cases may contain conditions so long as the conditions are reasonable under the facts and circumstances of the case."[6] *Rocco v. State*[7] was another case involving a bond order conditioned on the defendant's waiver of his Fourth Amendment rights. *Rocco* held "that a search conducted pursuant to a waiver of Fourth Amendment rights in a bail order should be subject to the same requirements as a search made pursuant to such a waiver in a probationary sentence."[8] We found no merit in Rocco's argument that the waiver was unconstitutional, concluding that imposition of the waiver as a condition of his release on bond was reasonable under the circumstances of that case. *Fox v. State*,[9] however, held that the defendant's waiver of Fourth Amendment rights was not valid where it was not part of his plea bargain agreement but was simply announced as a condition of probation by his probation officer after the agreement had been reached.

---

[1] *NationsBank v. Tucker*, 231 Ga. App. 622, 623 (1) (a) (500 SE2d 378) (1998) (citations and punctuation omitted).

[2] 252 Ga. 104, 108 (312 SE2d 107) (1984).

[3] Supra.

[4] 269 Ga. 772 (504 SE2d 679) (1998), overruled on other grounds, *Jones v. State*, 272 Ga. 900, 901-903 (2) (537 SE2d 80) (2000).

[5] 269 Ga. at 775 (4) (a); see *Stewart v. State*, 288 Ga. App. 735, 737-738 (3) (655 SE2d 328) (2007).

[6] *Rocco v. State*, 267 Ga. App. 900, 902 (1) (601 SE2d 189) (2004) (footnote omitted).

[7] Id.

[8] Id. at 903 (2).

[9] 272 Ga. 163, 164-165 (1) (527 SE2d 847) (2000).

Because the validity of Cantrell's waiver of Fourth Amendment rights and the reasonableness of imposing such a waiver as a condition of his pretrial release are also challenged by Cantrell, it was not proper for the court to take judicial notice of the bond order's waiver provision without following the procedure required by *Graves*.

2. Moreover, *Samson v. California*,[10] *State v. Sapp*,[11] and *State v. Newton*[12] show that a waiver of Fourth Amendment rights as a condition of parole, probation, or pretrial release cannot be used to justify a search by law enforcement officers who were unaware of the waiver at the time of the search.

The defendant in *Sapp* was arrested after a crack pipe was found in his possession during a patdown not grounded on a legitimate articulable suspicion. After the patdown, the defendant told the arresting officer that he was on probation. After his arrest, he was taken to jail where a urinalysis test was performed. After noting that the defendant had waived his Fourth Amendment rights as one of the special conditions of his probation, we held that the stop nonetheless constituted an illegal investigative stop mandating suppression of the crack pipe, observing that the police did not become aware that the defendant was on probation until after they had initiated the unauthorized *Terry* stop.[13] This holding in *Sapp* conforms to the United States Supreme Court's recognition in *Scott v. United States*[14] that "almost without exception in evaluating alleged violations of the Fourth Amendment, the Court has first undertaken an objective assessment of an officer's actions *in light of the facts and circumstances then known to him*."[15]

Thus, we held in *Newton* that the taint of an unauthorized search of the defendant by Georgia law enforcement officers was not attenuated by the fact that there was an outstanding Florida warrant for the defendant's arrest, since the officers had no knowledge of the warrant and thus did not act in reliance on such information.[16]

In *Samson*, the United States Supreme Court granted certiorari to determine the legality of a suspicionless search conducted under the authority of a California statute requiring all parolees to agree to be subject to search or seizure by law enforcement officers with or

---

[10] 547 U. S. 843 (126 SC 2193, 165 LE2d 250) (2006).

[11] 214 Ga. App. 428 (448 SE2d 3) (1994).

[12] 227 Ga. App. 394 (489 SE2d 147) (1997) (physical precedent only).

[13] 214 Ga. App. at 431-433 (3).

[14] 436 U. S. 128 (98 SC 1717, 56 LE2d 168) (1978).

[15] Id. at 137 (emphasis supplied).

[16] 227 Ga. App. at 397 (5).

without a warrant or cause at any time. The Supreme Court held that the Fourth Amendment does not prohibit such a search, noting that under California precedent, an officer would not act reasonably in conducting a suspicionless search absent knowledge that the person stopped for the search is a parolee.[17]

A contrary holding would give police broad license to engage in legally unjustified searches in the hope that the subjects fall within the increasingly broad category of persons who have been called upon to waive their Fourth Amendment rights. We would abdicate our responsibility in enforcing the equal protection provisions of the federal and state constitutions by condoning a search that would permit such a practice.

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

### DECIDED JANUARY 23, 2009.

*Stephen J. Lichtenstein, Nathaniel A. Horsley,* for appellant.
*Lee Darragh, District Attorney, Michael D. Morrison, Assistant District Attorney,* for appellee.

