**SECOND DIVISION
MILLER, P. J.,
MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 12, 2020**

# In the Court of Appeals of Georgia

A20A1165. WATSON v. THE STATE.

MERCIER, Judge.

The sole issue in this appeal is whether a provision contained in a bond order waived Jason Watson's Fourth Amendment rights. Watson was arrested for numerous drug-related charges, and thereafter filed a motion to suppress evidence discovered during a search conducted pursuant to a Fourth Amendment waiver in his bond order for a prior charge. The trial court denied his motion to suppress and, following a bench trial, Watson was convicted of trafficking in methamphetamine, trafficking in heroin, possession of methamphetamine with intent to distribute, possession of heroin with the intent to distribute and possession of Alprazolam.[1] Watson filed a motion for

---

[1] He was found not guilty of possession of ecstasy with intent to distribute, possession of hydrocodone with intent to distribute, possession of oxycodone with intent to distribute, possession of a controlled substance (amphetamine) with intent

new trial, which the trial court denied. He appeals, claiming that the trial court erred in denying his motion to suppress as his Fourth Amendment waiver was invalid. Finding no error, we affirm.[2]

In reviewing a motion to suppress where, as here, the trial court has made express findings of disputed facts, "an appellate court generally must accept those findings unless they are clearly erroneous" and it "must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court." *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) (footnote and citations omitted).

---

to distribute, possession of a controlled substance (methadone) with intent to distribute, possession of a controlled substance (buprenorphine and naloxone) with intent to distribute, possession of a schedule IV controlled substance (clonazepam) with intent to distribute, possession of a schedule IV controlled substance (phentermine) with intent to distribute, possession of a firearm during the commission of a felony and possession of marijuana, less than an ounce.

[2] While we affirm Watson's convictions, we note that the State failed to file an appellate brief. Pursuant to Court of Appeals Rule 23 (b), "[a] brief shall be filed by the State when it is the appellee in the appeal of a criminal case. The State's representative may be subject to sanctions, including contempt, for failing to file a timely responsive brief." Furthermore, this Court issued an order, dated June 9, 2020, directing the State to file a brief within 20 days of the order, which it failed to do. Although we do not issue a finding of contempt in this case, we note that the district attorney's failure to adhere to this rule in the future may subject him or her to a finding of contempt. See *Bostic v. State*, 341 Ga. App. 402, n. 1 (801 SE2d 89) (2017).

The evidence presented at the suppression hearing revealed that prior to the search at issue, Watson and Meagan Feaster[3] had been arrested for charges related to theft by receiving stolen property in Barrow County. Watson was released on bond pursuant to a one-page order titled "Conditions Order for Bond," dated October 21, 2016. The order stated that Watson "as a condition of bond, does hereby agree and consent to waive [his] fourth amendment rights, agreeing to with [sic]: that [his] property, person, residence, vehicle and papers may be searched without a warrant." Watson signed the order under a sentence that stated that he "acknowledge[d] notice of the above conditions of [his] bond[.]"

In July 2017, an agent with the Hall County Sheriff's Office's Multi-Agency Narcotics Squad was investigating Watson and Feaster for suspected drug trafficking. A confidential informant, working with the agent, had previously attempted to buy methamphetamine from Watson and Feaster but they would not enter Hall County.

Thereafter, the informant called the agent and reported that Watson and Feaster were at a campsite at Lake Lanier, located inside Hall County, selling drugs. The agent, knowing that Watson and Feaster had been arrested in Barrow County, called

___

[3] Feaster is not a party to this appeal.

3

the Barrow County District Attorney's office and asked if there were any bond conditions for their release. The district attorney's office informed the agent that Watson and Feaster had both signed bond orders containing the aforementioned Fourth Amendment waiver.

On July 11, 2017, the agent and other officers from the Hall County Sheriff's Office arrived at the Lake Lanier campgrounds to conduct a search. The agent observed a camper, two motorcycles and a white truck at the campsite. A campground security guard knocked on the camper door. Watson answered the door and the officers entered the camper, where they also found Feaster. The officers conducted a search pursuant to the waiver and discovered methamphetamine, scales, pills, packing material, pipes, bags of heroin, a gun and marijuana. They also learned that one of the motorcycles at the campsite was stolen.

Watson and Feaster were indicted together and both filed motions to suppress all items seized, as well as any statements made following their arrest, claiming that the officers conducted an unlawful warrantless search of the camper. A joint hearing on the motions was conducted, wherein the agent testified and certified copies of Watson's and Feaster's bond orders were introduced into evidence. Watson testified that he was unrepresented at the Barrow County bond hearing, that he did not know

4

that he had signed a Fourth Amendment waiver and that he "really didn't read over the paperwork." Feaster testified that she was also unrepresented at the bond hearing and that the judge did not "go over" the Fourth Amendment waiver with her. However, Feaster admitted that she had waived her Fourth Amendment rights before and that she knew what a waiver of Fourth Amendment rights meant.

"In Georgia we have held that bonds in both felony and misdemeanor cases may contain conditions so long as the conditions are reasonable under the facts and circumstances of the case." *Cantrell v. State*, 295 Ga. App. 634, 637 (1) (673 SE2d 32) (2009) (citation and punctuation omitted). "This holding is consistent with the principle that where a person charged with a crime is released on bail prior to trial, he remains in the constructive custody of the law." *Rocco v. State*, 267 Ga. App. 900, 902 (1) (601 SE2d 189) (2004) (citation omitted). We have previously held that imposition of a Fourth Amendment waiver in a bond order as a condition of a defendant's release for distributing and possessing illegal drugs was reasonable. See id. We found that the waiver was "not arbitrary or capricious, but is a reasonable exercise of the court's function of balancing the rights of the accused with public safety interests." Id. at 902-903 (1). Here, as Watson was released on bond for multiple charges, including felony theft by receiving stolen property, it was a

5

reasonable exercise of the court's function to balance Watson's Fourth Amendment rights with public safety interests. See generally *Allen v. State*, 258 Ga. 424, 425 (3) (369 SE2d 909) (1988).[4]

In its order denying the motions to suppress, the trial court found that Watson's and Feaster's "testimony that they did not read [the Fourth Amendment waiver] provision or that it didn't apply to them is not credible." Watson does not dispute that he signed the order containing the waiver. The waiver was not hidden with a myriad of other conditions in a multi-page order. Instead, the waiver is highlighted on the one-page order by a title section that states "WAIVER OF FOURTH AMENDMENT RIGHTS", which is centered, written in caps, bold type and underlined. "Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony." *Hughes*, supra at 747 (1) (citation and punctuation omitted).

---

[4] "[A] search conducted pursuant to a waiver of Fourth Amendment rights in a bail order should be subject to the same requirements as a search made pursuant to such a waiver in a probationary sentence." *Cantrell*, supra at 637 (1) (citation and punctuation omitted).

6

The trial court was entitled to find Watson not credible in his claims that he did not understand he was waiving his Fourth Amendment rights by signing the order. See generally *Samson v. California*, 547 U. S. 843, 852 (III) (126 SCt 2193, 165 LE2d 250) (2006) (because the parolee signed an order in which he clearly submitted to the Fourth Amendment waiver, he was "unambiguously aware of" the condition) (citation and punctuation omitted). Compare *Fox v. State*, 272 Ga. 163, 164-165 (1) (527 SE2d 847) (2000) (the probationer's Fourth Amendment waiver as a special condition of probation was not valid when, inter alia, the trial court did not inform the probationer of the waiver during his plea hearing). As the trial court was not required to believe Watson's testimony that he was unaware of the Fourth Amendment waiver, and the imposition of the waiver as a condition of Watson's bond was reasonable, the trial court did not err in denying the motion to suppress. See *Rocco*, supra.

*Judgment affirmed. Miller, P. J., and Coomer, J., concur*.