**FIFTH DIVISION
MCFADDEN, P. J.,
GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 25, 2022**

# In the Court of Appeals of Georgia

A22A1110. BROOKS v. THE STATE.

GOBEIL, Judge.

In 2018, a Cobb County jury found Antonio Brooks guilty of two counts of rape, two counts of aggravated assault, two counts of false imprisonment, and one count of burglary, based on incidents that occurred in 1986. He filed a motion for new trial, as amended. Following a hearing, the trial court denied Brooks's motion. In his instant appeal,[1] Brooks argues that the trial court erred by: finding that Brooks knowingly and intelligently waived his right to post-conviction counsel; denying his request for a mandatory transfer hearing as the juvenile court had jurisdiction over the

---

[1] Brooks, proceeding pro se, filed an initial brief and enumeration of errors on April 28, 2022. After being granted an extension, the State filed its response brief on June 16, 2022. On July 6, 2022, Kenneth W. Muhammad entered an appearance as counsel of record for Brooks and filed a reply brief on Brooks's behalf on September 16, 2022.

matter; denying Brooks's motion for a plea in bar; admitting bad character evidence; and denying Brooks's request for an in-camera review of prison records. Brooks further contends that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Hall v. State*, 335 Ga. App. 895, 895 (783 SE2d 400) (2016) (citation and punctuation omitted). So viewed, the record shows that D. S. was visiting from out of state over labor day weekend in 1986 and stayed with her boyfriend at his apartment in Cobb County. On September 1, 1986, after her boyfriend left for work, D. S. took a shower. When she stepped out of the shower and was drying her hair, she was attacked by a man wielding a knife. The man threw D. S. back into the bathroom, threatened to kill her, held the knife to her throat, and raped her by inserting his penis into her vagina, forcibly and against her will. D. S. was unable to get a good look at her assailant

2

because it was dark in the bathroom and he had a hood over his head. After raping her, the man threw D. S. into the bathtub, turned on the cold water, and threatened to kill D. S. and her boyfriend if she reported the incident. After the perpetrator left, D. S. went to a friend's apartment and called the police. The police responded and D. S. was taken to the hospital where a rape kit was performed.

Two days later, on September 3, 1986, M. H. was in her apartment in Cobb County when an unknown young man came to her door and asked her for help in finding someone in the apartment complex for a delivery. When M. H. opened the door, the man forced his way in, beat her, punched her in the face with his fist, and then raped her. The man then forced M. H. to take a shower to try and wash away any evidence, and threatened to kill her if she told anyone about the incident. After reporting the attack to the police, M. H. went to the hospital where a rape kit was performed. M. H. died in 2013.

In May 2013, Detective Shannon Arrowood of the Marietta Police Department received a phone call from a concerned citizen about a potential rape that occurred back in 1986. The detective conducted an investigation, which uncovered old police reports about two unsolved rapes from September 1986 in which DNA evidence was collected from the victims, D. S. and M. H. The police requested that the DNA

3

evidence be run through the Combined DNA Index System ("CODIS") database.[2] The search yielded a hit to Brooks, who was serving a 30-year sentence for 1988 convictions for rape and aggravated sodomy. Law enforcement was notified about the match on September 12, 2013, upon completion of the Georgia Bureau of Investigation ("GBI") report.

In January 2016, Brooks was indicted on two counts of rape (Counts 1 and 4), two counts of aggravated assault (Counts 2 and 5), two counts of false imprisonment (Counts 3 and 6), and two counts of burglary (Counts 7 and 8) for the incidents involving D. S. and M. H.[3]

At trial, a GBI forensic biologist testified that the male DNA recovered from both victims' rape kits was identical and matched to Brooks. The jury found Brooks guilty on Counts 1 to 7. The trial court sentenced him to a total term of two consecutive life sentences plus 20 years to be served in confinement with an additional 20 years on probation. Brooks, who had been represented by counsel at trial, filed a counseled motion for new trial, as amended. He also filed a pro se motion

---

[2] CODIS is "a national database of DNA profiles." *Glaze v. State*, 317 Ga. App. 679, 680 (732 SE2d 771) (2012).

[3] The State later nolle prossed one of the burglary counts (Count 8).

4

for new trial while still represented by counsel.[4] After Brooks executed a detailed waiver of his right to representation, the trial court held a *Faretta*[5] inquiry during the December 7, 2020 hearing on Brooks's motion for new trial. The court subsequently granted Brooks's request to proceed post trial without counsel.[6] He then filed additional amendments to his now pro se motion for new trial. The trial court denied Brooks's motion, and this appeal followed.

Before we reach the merits of the appeal, we note that Brooks's initial pro se brief fails to comply with this Court's rules because he includes several arguments within the body of his brief that are not listed as numbered and distinct enumerations of error. Court of Appeals Rule 25 (a) (4); *Riggins v. State*, 128 Ga. App. 478, 478 (2) (197 SE2d 154) (1973) (absent an enumeration of error relating to alleged error argued by defendant in his brief, this Court was without jurisdiction to consider alleged error). He also fails to support many of his arguments with citations to the

---

[4] Brooks wrote his post-conviction counsel's name and bar number on his pro se pleadings; counsel did not authorize him to sign her name to his pleadings.

[5] *Faretta v. California*, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975).

[6] The trial court indicated that if it permitted Brooks to represent himself, it would consider his pro se pleadings even though they were filed while Brooks still was represented by counsel.

record and legal authority.[7] See Court of Appeals Rule 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."). Brooks's pro se status at the time he filed his initial brief did not relieve him of his obligation to comply with the rules of this Court. See *Wimbush v. State*, 345 Ga. App. 54, 59 (812 SE2d 489) (2018) ("The rules of this [C]ourt are not intended to provide an obstacle for the unwary or the pro se appellant.") (citation and punctuation omitted). Briefs that do not conform to our rules "hinder this [C]ourt in determining the substance and basis of an appellant's contentions both in fact and in law and may well prejudice an appellant's appeal regardless of the amount of leniency shown." Id. at 59-60 (citation and punctuation omitted). Nevertheless, in our discretion, we will address his claims of error to the extent we are able to understand them in conjunction with his counseled reply brief. *Bennett v. Moody*, 225 Ga. App. 95, 96 (483 SE2d 350) (1997).

1. Although not listed in his enumeration of errors in his initial brief, Brooks alleges that he "was forced under duress to proceed pro se." In his reply brief, Brooks expands on this argument, asserting: he was never specifically advised of the dangers

---

[7] We also note that many of Brooks's citations to the record in his initial brief are incorrect and/or irrelevant to his stated arguments.

6

of proceeding pro se during post-conviction proceedings; he had an interest in ensuring that all necessary steps were taken to prepare his defense case; his trial counsel should have been subpoenaed to appear at the motion for new trial hearing; and the trial court failed to take proper consideration of his statements — including wanting to talk to his post-conviction counsel and file a motion for appointment of new counsel — as proof of his desire to proceed with counsel rather than pro se.

As an initial matter, Brooks was represented by four different attorneys before the trial court. John Hildebrand ("first trial counsel") represented Brooks from May 3, 2016 until August 12, 2016. Kevin Rodgers ("trial counsel") represented Brooks from August 12, 2016 through the conclusion of his trial in June 2018. Brian Hobbs was appointed to represent Brooks in post-conviction proceedings on July 17, 2018, and he served in that role until August 2019. Sylvia Goldman ("post-conviction counsel") was then appointed on August 22, 2019, and represented Brooks until the trial court granted his request to proceed pro se on December 9, 2020.

"A criminal defendant in Georgia is constitutionally entitled to the effective assistance of counsel during his trial, motion for new trial proceeding, and direct appeal." *Allen v. Dakar*, 311 Ga. 485, 497 (2) (858 SE2d 731) (2021) (citation and punctuation omitted). "In most cases, before a defendant may properly proceed pro

se in initial post-conviction proceedings and on direct appeal, he must be advised of the dangers of such self-representation and knowingly, intelligently, and voluntarily waive his right to appellate counsel on the record." *Donovan v. State*, 362 Ga. App. 408, 409 (2) (a) (868 SE2d 808) (2022) (citation and punctuation omitted). See generally *Faretta v. California*, 422 U. S. 806, 835 (V) (95 SCt 2525, 45 LE2d 562) (1975) ("[I]n order to represent himself, the accused must 'knowingly and intelligently' forgo [the traditional benefits associated with the right to counsel]. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.") (citations and punctuation omitted). "A trial court's ruling as to whether the defendant's waiver of the right to counsel was valid is reviewed for abuse of discretion." *Britt v. State*, 362 Ga. App. 456, 456 (868 SE2d 824) (2022) (citation and punctuation omitted).

On July 22, 2020, due to the COVID-19 pandemic, the trial court held a hearing via video conference on Brooks's motion for new trial. Brooks claimed that he did not have the funds to afford "zealous" representation and objected to the

virtual hearing because he had "a very tremendous amount of paperwork, a long paper trail," that he wished to "submit on the record, in open court." He also asked whether he would be permitted to talk or meet with his post-conviction counsel (who was also present at the hearing) as he had not had the opportunity to properly confer with her. According to Brooks, his attorneys had not met with him sufficiently to allow him to "present [his] side of the case or [his] story[, and] [t]hey have taken it on themselves to do what they wanted to do." Brooks then stated: "So, at this time, I will ask could I proceed pro se, as I have been trying to proceed pro se?" Brooks indicated that he wished to proceed pro se in order to pursue all of his desired claims in his motion for new trial, as well as file additional motions. In response, post-conviction counsel explained that she had been in "constant communication" with Brooks, but he did not feel that she was "delving deep enough" into the history of his charges. The State then suggested that the trial court hold a *Faretta* hearing. After the State moved for a continuance on Brooks's behalf, the trial court adjourned the hearing. The court directed post-conviction counsel to confer with Brooks to "find out whether or not he wants to go forward with you or without you."

At the next hearing, on December 7, 2020, the trial court accommodated Brooks's request that he be permitted to be physically present in the courtroom;

9

post-conviction counsel and the State appeared via video conference. The trial judge asked Brooks: "Do you still want to represent yourself or do you want [post-conviction counsel] to act as your attorney?" Brooks replied that he had been unable to hear post-conviction counsel during a video call the day before, and asked the court for additional time to speak to her before his motion for new trial hearing, as he had not spoken to counsel for months. But he acknowledged that he and post-conviction counsel had spoken, as per the court's instruction, at the conclusion of the July 2020 hearing. Brooks continued

> [post-conviction counsel] did send me a *Faretta* [w]aiver,[8] as [the trial court] had suggested. She did send me that as well. But, basically, what I was wanting to know is that there were some things that I was asking to be done, your Honor, and if those things are able to be done, then I would much rather have a 20-year seasoned attorney as [post-conviction counsel] is. But if those things [have] not been done, then yes, I would have to proceed [pro se].

---

[8] Counsel had provided Brooks with a copy of the *Faretta* waiver of counsel form in advance of the December 7, 2020 hearing, which Brooks already had filled out.

Brooks also expressed a desire for first trial counsel and trial counsel to be present at his motion for new trial hearing to present evidence in support of his ineffective-assistance claims.

In response, post-conviction counsel explained that she was not prepared to breach her duty as an officer of the court and put forth meritless claims. Counsel described that Brooks wanted her to "adopt his pleadings, put [her] bar number on it and argue what he's done. And I've already told him I would not do that." The trial court asked post-conviction counsel if she had informed Brooks of the potential "dangers and pitfalls" of pursuing his own litigation strategy in connection with the motion for new trial, which included subpoenaing first trial counsel and trial counsel. Post-conviction counsel confirmed that she and Brooks had had those conversations on "multiple occasions." In response, the trial court explained to Brooks that:

> If you want to put forth these arguments that this seasoned lawyer believes will not help you and if you want to put these lawyers on the witness stand, where — by the way, the State would be able to ask them questions, not just you, but the State can ask them questions. That's a very, very dangerous thing to do. It doesn't bother me one way or the other if you do it, but it's a very dangerous thing to do."

After being placed under oath, the trial court asked Brooks if he wanted to represent himself. In response, Brooks described the legal arguments he wanted to raise in his motion for new trial. This exchange followed:

COURT: Let me interrupt you. I have one question for you, and we either do this or I'm sending you right back.

BROOKS: Yes, sir. Let's move forward.

COURT: If you want to represent yourself, then I have some stuff I need to do.

BROOKS: Yes, sir.

COURT: If you want to use this lawyer, then that's a different matter. I need to know.

BROOKS: Well, no, sir, it doesn't sound like you're scratching the surface of the issues, your Honor. Let's please move forward with the *Faretta* hearing, sir.

COURT: I need to know in your own words, "Judge, I want to represent myself" or "Judge, I want [post-conviction counsel] to represent me." Just give me one of those two.

BROOKS: No, sir, I cannot say that I want [post-conviction counsel] to represent me. The issues that you said that you would allow, that I have submitted in my —

COURT: Do you want to represent yourself or not?

BROOKS: Yes, sir, I want to represent myself.

12

COURT: All right. We'll go ahead with the *Faretta* hearing.

In a lengthy colloquy, the trial court went through the advantages of retaining counsel and the risks of self-representation with Brooks. In the middle of the court's questions, Brooks asserted that he wanted to file a motion seeking the appointment of new counsel "if [post-conviction counsel] was not wanting to argue my issues," to which the court replied that Brooks would either have to continue with his current counsel or proceed pro se. Brooks confirmed that he had not been threatened in any way, no one had promised him anything, and that he knowingly and intelligently waived his constitutional right to counsel after talking to both the trial judge and post-conviction counsel. The court ultimately concluded that Brooks knowingly and intelligently waived his right to counsel. Brooks then produced his previously-addressed motion for appointment of new post-conviction counsel, which the trial court determined was moot, given the court's determination that Brooks knowingly and voluntarily waived his right to post-conviction counsel and elected to proceed pro se.

Contrary to Brooks's assertion, the trial court tailored its questioning during the *Faretta* inquiry to ensure that Brooks was aware of the dangers of proceeding pro se during his post-conviction proceedings. An examination of the record reveals that

13

the court specifically advised Brooks that if he represented himself during his motion for new trial and on appeal, he would not be able to raise ineffective-assistance claims against himself, and he retained the right to appointed counsel at all stages of the case. Notably, our Supreme Court has clarified that it "has not endorsed a specific colloquy that trial courts should use when advising defendants of the dangers of self-representation in post-conviction proceedings[.]" *Allen*, 311 Ga. at 498 (2) (a) n. 11. See *Stinson v. State*, 352 Ga. App. 528, 531-532 (1) (a) (835 SE2d 342) (2019) (defendant knowingly and voluntarily waived his right to counsel in trial proceedings; defendant informed court that he needed to "go pro se," after which court conducted *Faretta* hearing, during which trial court advised defendant of potential consequences of proceeding pro se, including constitutional rights he would be giving up and that he would be responsible for preparing and making strategic decisions for trial and preserving trial record). Importantly, the trial court's colloquy included information regarding the dangers of self-representation in post-conviction proceedings. Compare *Allen*, 311 Ga. at 498-499 (2) (a) (holding that "the record demonstrate[d] that [defendant] did not receive warnings regarding the dangers of self-representation on appeal and [so] did not expressly waive his right to appellate counsel" even though the trial court had "explained to [defendant] in detail the consequences of his

14

self-representation at trial and found that he was aware of his rights and the consequences of proceeding without an attorney [at that stage]"); *Britt*, 362 Ga. App. at 458-459 (trial court abused its discretion in finding a waiver of defendant's right to counsel in post-conviction proceeding on defendant's pro se motion to withdraw his plea of guilty; while the record showed that defendant was warned of the dangers of self-representation at trial, there were no discussions at any of the hearings about the dangers of self-representation in the post-conviction phase).

Brooks also argues that his first trial counsel and trial counsel should have been subpoenaed, either by post-conviction counsel or the State, to appear at the motion for new trial hearing. At the July 22, 2020 hearing, the State simply indicated that it "*may*, at some other juncture, ask for [a] continuance in order to bring [first trial counsel] or [trial counsel] to court to testify." However, the State was under no obligation to present evidence on the issue of trial counsel's performance at trial at the motion for new trial hearing. See *McClarity v. State*, 234 Ga. App. 348, 351 (3) (506 SE2d 392) (1998) ("The burden is on the party alleging error to show it affirmatively by the record[.]") (citation and punctuation omitted). Brooks's post-conviction counsel explained at the December 7, 2020 hearing that she did not subpoena Brooks's first trial counsel and trial counsel to appear at the motion for new

15

trial hearing because she did not believe that there was any merit to Brooks's ineffective-assistance claims. Following the *Faretta* inquiry at the same hearing, Brooks indicated to the trial court that he was ready to proceed pro se on his motion for new trial and did not need additional time to procure witnesses despite being given an opportunity to do so.

Brooks contends that the trial court failed to acknowledge that his statements at the motion for new trial hearing demonstrated a desire to continue with counsel rather than pro se. First, he highlights that the trial court refused his requests for additional time with counsel to ensure that all necessary steps were taken to prepare his case. However, at the December 7, 2020 hearing, post-conviction counsel stated that she "had multiple conversations with [Brooks] through his mom calling and doing third-parties. [Counsel] also arranged through the prison to have a conversation with him that went more than 45 minutes." The record shows that additional time would not have changed Brooks's situation because post-conviction counsel explained that she could not put forth all the claims that Brooks wanted her to file while also fulfilling her duty as an officer of the court.

Brooks also notes that he asked the court to appoint him new post-conviction counsel, but the court ignored his requests. However, this assertion mischaracterizes

16

what transpired at the hearing. The court advised Brooks that he could either be represented by current post-conviction counsel or proceed pro se. Even though Brooks disagreed with post-conviction counsel's proposed strategy, it was squarely within the trial court's discretion to conclude that Brooks knowingly and intelligently waived his right to counsel in order to pursue his desired claims in his motion for new trial. See *Holsey v. State*, 291 Ga. App. 216, 218-219 (2) (661 SE2d 621) (2008) ("An indigent defendant is not entitled to have his appointed counsel discharged unless he can demonstrate justifiable dissatisfaction with counsel, such as conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between counsel and client. Where a defendant does not have a good reason for discharging his court-appointed attorney, the trial court does not err in requiring him to choose between representation by that attorney and proceeding pro se.") (citations and punctuation omitted).

Given these circumstances, we conclude that the trial court did not abuse its discretion in finding that Brooks knowingly and intelligently waived his right to post-conviction counsel and he was not entitled to the appointment of new counsel. *Donovan*, 362 Ga. App. at 409 (2) (a); see *State v. Evans*, 285 Ga. 67, 69 (673 SE2d 243) (2009) (explaining that record of *Faretta* hearing showed defendant's waiver of

17

his right to trial counsel was made intelligently and knowingly, where "trial court repeatedly cautioned [the defendant] about the dangers of self-representation, and discussed the benefits of having qualified counsel representing him, and [the defendant] clearly understood what he was undertaking" by representing himself).

2. Brooks argues that the superior court erred by failing to hold a transfer hearing.[9] Because Brooks was sixteen at the time of the offenses in September 1986, he maintains that the juvenile court had original jurisdiction over the case. Brooks filed a pretrial motion to dismiss the indictment based on this same argument, which the trial court denied. However, Brooks fails to acknowledge that under OCGA § 15-11-560 (b) (4), "[t]he superior court shall have exclusive original jurisdiction over the trial of any child 13 to 17 years of age who is alleged to have committed . . . rape[.]" (The superior court does have discretion to transfer some types of cases over which it has exclusive jurisdiction to the juvenile court, but not rape. OCGA § 15-11-560

___

[9] In support, Brooks cites to OCGA § 17-7-23, which covers the requirement of a preliminary hearing to determine probable cause to have a case bound over to superior court. However, nothing in this Code Section prevents the State from directly indicting a defendant or from subsequently presenting the case to the grand jury after a preliminary hearing, if probable cause is not found. See *Taylor v. State*, 177 Ga. App. 624, 624-625 (1) (340 SE2d 263) (1986) (holding that errors in a preliminary hearing do not afford grounds for relief when the defendant is subsequently indicted by a grand jury).

18

(e) (1)). Additionally, only the district attorney, upon specific findings, retains the ability to transfer the case to the juvenile court. See OCGA § 15-11-560 (d). Brooks has failed to show that he was entitled to a transfer hearing and this claim is without merit.

3. Brooks contends that the trial court erred in failing to give "the contested jury charge." However, Brooks does not specify the exact jury charge the trial court should have delivered to the jury, and thus, we deem this claim abandoned. See Court of Appeals Rule 25 (d) (1).

4. Brooks argues that the trial court erred in denying his plea in bar based on the expiration of the applicable statute of limitation and that his indictment was based on "stale facts."[10] Specifically, he asserts that he was not "unknown" as the perpetrator of the crimes because his DNA was entered into the CODIS database in 2008, and thus, the statute of limitation on all his charges had expired by the time he was indicted in 2016.

_____

[10] Brooks also alleges that Detective Arrowood improperly placed a detainer on him, and his indictment "was predicated on perjured testimony" from Detective Arrowood. However, he fails to provide authority to support his assertions, and we deem these claims abandoned. See Court of Appeals Rule 25 (d) (1).

"In criminal cases, the period of limitation runs from the commission of the offense to the date of the indictment. The burden is on the State to prove that a crime occurred within the applicable statute of limitation." *Beavers v. State*, 345 Ga. App. 870, 871 (815 SE2d 223) (2018) (citation and punctuation omitted). "The appellate standard of review for a plea in bar asserting a statute of limitations defense is a de novo review of the issue of laws." *Duke v. State*, 298 Ga. App. 719, 720 (1) (681 SE2d 174) (2009) (citation and punctuation omitted). Where a trial court's ruling "involves a mixed question of fact and law, we accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently apply the law to the facts." Id. (citation and punctuation omitted).

When the offenses occurred in September 1986, the offense of rape was punishable by death or by imprisonment for life, or by imprisonment for not less than one nor more than 20 years.[11] As a result, the statutory period of limitation for rape was seven years.[12] Absent any tolling of the limitation period, no indictment could be

---

[11] OCGA § 16-6-1 (b) (1978) (former Ga. Code Ann. § 26-2001) ("A person convicted of rape shall be punished by death or by imprisonment for life, or by imprisonment for not less than one nor more than 20 years."); Ga. L. 1978, p. 3 § 1.

[12] OCGA § 17-3-1 (1968) (former Ga. Code Ann. § 26-502) (a) ("A prosecution for murder may be commenced at any time."), (b) ("Prosecution for other crimes punishable by death or life imprisonment must be commenced within seven years

brought on the rape charges after September 1993. As for the charges of aggravated assault, false imprisonment, and burglary, the statutory period of limitation for these offenses was four years.[13] Absent any tolling of the limitation period, no indictment on these offenses could be brought after September 1990. Here, the subject indictment was returned on January 7, 2016. The indictment included the following tolling provisions:

> For each of the aforementioned counts of this Indictment to which the statute of limitations applies, Counts 1, 2, 3, 4, 5, 6, 7 and 8, pursuant to OCGA § 17-3-2, the Grand Jurors aforesaid also find that the accused person committing the aforementioned crimes was unknown until February 17, 2014, to wit: said accused was not positively identified as having committed the aforementioned crimes until DNA results were obtained in February of 2014.[14]

---

after the commission of the crime."), (c) ("Prosecution for felonies other than those specified in subsections (a) and (b) of this Code section must be commenced within four years after the commission of the crime . . . .

[13] OCGA § 17-3-1 (c) (1968) (quoted in n. 12, supra).

[14] The State initially alleged a second tolling provision pursuant to OCGA § 17-3-1 (d), concerning prosecutions where the accused's identity is discovered through DNA evidence. Trial counsel filed a motion to dismiss the indictment on June 28, 2017, alleging that the DNA tolling provision only applies to crimes occurring on or after July 1, 2002. See *Beavers*, 345 Ga. App. at 873. The State later conceded that such provision was inapplicable to Brooks's case, and proceeded solely under the "person unknown" tolling provision.

The "person unknown" exception applies when the identity of the person who committed the crime is unknown, and it tolls the limitation period from the time the crime was committed until that person's identity becomes known to the State. See OCGA § 17-3-2 (2) ("[t]he period within which a prosecution must be commenced . . . does not include any period in which [t]he person committing the crime is unknown"). Our Supreme Court has clarified that the identity of the perpetrator becomes "known" to the State when the State becomes aware of facts that give rise to probable cause to arrest that person for the crime. *Riley v. State*, 305 Ga. 163, 169 (3) (824 SE2d 249) (2019) (statute of limitation is tolled "until the State possesses sufficient evidence to authorize the lawful arrest of that person for the crime charged"). Probable cause exists when the facts known to the State could lead a reasonably prudent person to conclude that there is a probability — more than mere suspicion, but less than absolute certainty — that the defendant committed the offense. *Hughes v. State*, 296 Ga. 744, 748-749 (2) (770 SE2d 636) (2015); see *Riley*, 305 Ga. at 169 (3) ("[t]he test of probable cause requires merely a probability") (citation and punctuation omitted).

Thus, to establish that the person unknown exception applies, the State must show that the facts within its knowledge — including knowledge imputed from the

22

victim — were not enough to lead a reasonably prudent person to identify the defendant as the perpetrator until a time that, relative to the indictment, was within the limitation period. See *Riley*, 305 Ga. at 169 (3) ("[T]he State has the burden of proving that it lacked probable cause to arrest the defendant for a time sufficient to deem the indictment or other charging document timely."); accord *Lewis v. State*, 306 Ga. 455, 463 (4) (831 SE2d 771) (2019) (tolling applies where "the State has not obtained sufficient information to establish probable cause to arrest a particular suspect"). If the known facts would allow prudent persons to draw differing conclusions on this point, probable cause exists. See *Hughes*, 296 Ga. at 749 (2); *State v. Culler*, 351 Ga. App. 19, 23 (830 SE2d 434) (2019).

On appeal, Brooks argues that the State should have discovered his identity earlier because his DNA was first entered into CODIS on January 22, 2008 after the Department of Corrections took a sample from him while he was incarcerated on his 1988 convictions. However, Brooks fails to point to any evidence that the State had actual knowledge that Brooks committed the instant crimes until the GBI report showing a DNA match to Brooks came back in September 2013. Importantly, we have refused to interpret the person unknown tolling provision contained in OCGA § 17-3-2 (2) as applying a constructive knowledge or "should have known" standard.

23

See *Beasley v. State*, 244 Ga. App. 836, 837-838 (536 SE2d 825) (2000) (rejecting defendant's assertion that the State should have been charged with knowledge of his identity because it did not exercise reasonable diligence in matching his fingerprint until more than four years after the burglary); *Countryman v. State*, 355 Ga. App. 573, 580 (1) (845 SE2d 312) (2020) ("the tolling period ends when the State has *actual*, as opposed to constructive, knowledge of both the defendant's identity and the crime") (citation and punctuation omitted; emphasis in original).

In sum, we conclude that the State was not chargeable with knowledge that gave rise to probable cause to arrest Brooks for the instant crimes until September 2013, when it received a positive CODIS hit on Brooks from DNA recovered from the victims' rape kits. The seven-year statute of limitation for rape and four-year statute of limitation for the other crimes began to run as of September 2013, and the operative January 2016 indictment issued within the limitation period. As a result, the trial court properly denied Brooks's plea in bar based on the statute of limitation.

5. Brooks asserts that the trial court erred in admitting "bad character evidence" pursuant to OCGA § 24-4-404.[15] We find no reversible error.

---

[15] Because the instant case was tried in 2018, the new Evidence Code was in effect. See Ga. L. 2011, p. 99, § 101 (the new Evidence Code explicitly applies to "any motion made or hearing or trial commenced on or after [January 1, 2013].").

In the first instance, the State filed a pretrial motion indicating that it intended to "introduce evidence of other crimes, wrongs or acts" at trial under OCGA § 24-4-413, and not Rule 404 as alleged by Brooks. Specifically, the State sought to introduce evidence of Brooks's 1988 convictions for rape and aggravated sodomy, to which Brook's trial counsel objected. Following a hearing, the trial court granted the State's motion, concluding in relevant part "that the probative value of the extrinsic act of sexual assault is not substantially outweighed by unfair prejudice," and "there is [a] prosecutorial need for said evidence and the extrinsic act of sexual assault is similar in nature to the sexual assaults that [Brooks] is charged with in the current case." Brooks's 1988 convictions were subsequently admitted at trial subject to trial counsel's prior objection.[16]

OCGA § 24-4-413 (a) provides: "In a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its

---

[16] Brooks summarily asserts that the State "was allowed to let the jury review the records and the victim's statements about the crime from 1988 for which Brooks was serving time for. This . . . is constitutionally barred." However, Brooks fails to support his contention that the jury in the instant case reviewed "records" or the victim's statement stemming from the 1988 convictions, or that this material was ever tendered into evidence.

bearing on any matter to which it is relevant." This provision "supersede[s] the provisions of OCGA § 24-4-404 (b) [17] in sexual assault and child molestation cases . . . and create[s] a rule of inclusion. . . ." *Dixon v. State*, 341 Ga. App. 255, 258 (1) (800 SE2d 11) (2017) (citations, punctuation, and footnote omitted). Moreover, "the State can seek to admit evidence under [this] provision[ ] for any relevant purpose, including propensity." Id.

The admission of evidence under Rule 413, however, is still subject to the balancing test found in OCGA § 24-4-403, and may be excluded if the danger of unfair prejudice outweighs its probative value, or if it is cumulative, misleads the jury, or results in confusion over the issues. See *Dixon v. State*, 350 Ga. App. 211, 213 (1) (828 SE2d 427) (2019). "A trial court's decision to admit other acts evidence will be overturned only where there is a clear abuse of discretion." *Robinson v. State*,

---

[17] OCGA § 24-4-404 (b) provides, in part:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

26

342 Ga. App. 624, 634 (4) (a) (805 SE2d 103) (2017) (citation and punctuation omitted).

Upon review, we conclude that the trial court did not abuse its discretion in admitting the other acts evidence. Evidence of the prior sexual assault, which required the same sort of intent as required to prove the sexual assault crimes charged here, was relevant to show Brooks's intent. See *Kritlow v. State*, 339 Ga. App. 353, 355 (2) (793 SE2d 560) (2016) (trial court correctly ruled that prior sex crimes evidence was relevant to issue of intent). At trial, Brooks's defense centered on attacking the credibility of the State's witnesses and alleging that the State mishandled the DNA evidence. In the face of Brooks's attacks on the victims' credibility, the State was able to use the evidence of the prior convictions to bolster the credibility of the victims by demonstrating that their circumstances were not unique. See *Robinson*, 342 Ga. App. at 635 (4) (a) (evidence of defendant's prior offense of sexual assault was relevant to disprove his claim that the victim's allegation of a forced sexual encounter was fabricated). Brooks's 1988 sexual assault convictions also tended to disprove his claim that the State mishandled the evidence in the 1986 crimes. See *State v. Atkins*, 304 Ga. 413, 423 (3) (819 SE2d 28) (2018) ("The doctrine of chances relies on objective observations about the probability of events and their relative

27

frequency, and the improbability of multiple coincidences.") (citation and punctuation omitted).

Additionally, the trial court minimized the risk of undue prejudice by giving the jury a limiting instruction on the use of this evidence prior to the admission of the 1988 victim's testimony, and again during the jury charge after the close of the evidence. See *Lofland v. State*, 357 Ga. App. 92, 97 (1) (a) (850 SE2d 175) (2020). Finally, the State tendered a certified copy of Brooks's 1988 convictions at trial, and thus, "when the evidence of the [prior conviction] was presented, the jury learned that [Brooks] had . . . been convicted and served a prison sentence for his earlier conduct, making it less likely that the jury would want to punish [Brooks] for this past conduct rather than the charged crimes." *Westbrook v. State*, 355 Ga. App. 334, 338 (2) (844 SE2d 208) (2020). Under these circumstances, we find no abuse of the trial court's discretion in admitting evidence of Brooks's 1988 convictions for rape and aggravated sodomy.

6. Brooks alleges that the trial court erred in allowing the State to present hearsay evidence under OCGA § 24-8-807, as one of the victims was deceased at the time of trial. In the first instance, Brooks has abandoned this claim because he has

28

failed to put forth any meaningful argument. See Court of Appeals Rule 25 (d) (1).

In any event, his contention is without merit.

OCGA § 24-8-807 provides in relevant part:

A statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule, if the court determines that: (1) The statement is offered as evidence of a material fact; (2) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.

The State filed a pretrial motion indicating that it intended to introduce evidence of statements made by M. H., who died in 2013, pursuant to the residual exception. Brooks's trial counsel objected to the admission of the statements, arguing in pertinent part that they lacked the requisite indicia of reliability. The trial court subsequently granted the State's motion, determining that the statements were relevant and the surrounding circumstances demonstrated their trustworthiness and reliability. At Brooks's 2018 trial, one of M. H.'s friends, her ex-husband, her parents, and her partner testified to, either what they witnessed first hand in the aftermath of the attack, or to what M. H. told them about the incident.

The residual exception to hearsay is "to be used very rarely and only in exceptional circumstances, and only when there exists certain exceptional guarantees of trustworthiness and high degrees of probativeness and necessity." *Tanner v. State*, 301 Ga. 852, 855 (1) (804 SE2d 377) (2017). "Whether there are exceptional guarantees of trustworthiness is a determination that focuses on the declarant and the circumstances under which the declarant made the statement to the witness." *Miller v. State*, 303 Ga. 1, 5 (2) (810 SE2d 123) (2018) (emphasis omitted). We review a trial court's decision to admit hearsay evidence under Rule 807 for an abuse of discretion. *State v. Holmes*, 304 Ga. 524, 529 (2) (a) (820 SE2d 26) (2018). Our Supreme Court has cautioned that an appellate court should be "particularly hesitant to overturn a trial court's admissibility ruling under the residual hearsay exception absent a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors." Id. (citation and punctuation omitted).

Here, M. H.'s post-rape statements, made to close friends and family shortly after the incident, were offered as evidence that she had been raped, forcibly and against her will; they were more probative on the points for which they were offered than other evidence which could have been procured through reasonable efforts; and

the trial court found that the general purpose of the rules of evidence and the interests of justice would best be served by admission of the statements into evidence. Under these circumstances, the court did not abuse its discretion in admitting the statements at trial. See *Jacobs v. State*, 303 Ga. 245, 250-251 (2) (811 SE2d 372) (2018) (concluding that the trial court did not abuse its discretion in determining that victim's statements to her friends and her own text messages describing the nature of her abusive relationship with the defendant prior to her death had the requisite guarantees of trustworthiness to be admissible at trial pursuant to Rule 807).

7. Brooks contends that the trial court erred in denying his request for an in-camera review of his prison records and/or prison computer,[18] which he argues constituted a *Brady*[19] violation. In the first instance, "[b]ecause [Brooks] failed to make any proffer of the [evidence that he was denied access to], it is impossible for him to show there is a reasonable probability the results of the trial proceedings would have been different." *Ballard v. State*, 297 Ga. 248, 254 (6) (f) (773 SE2d 254) (2015) (citation and punctuation omitted). In any event, Brooks's contention fails.

[18] Brooks apparently sought these documents to support his assertion that law enforcement had identified him as a suspect in the 1986 crimes prior to the DNA match in 2013.

[19] *Brady v. Maryland*, 373 U. S. 83, 87 (83 SCt 1194, 10 LE2d 215) (1963).

Trial counsel filed a motion for investigative and expert funds on September 22, 2016 in order "to adequately defend the charges against [Brooks]". Although Brooks asserts that his motion was never set for a hearing, the record shows that the defense hired an investigator. Next, Brooks filed two open records requests with the Department of Corrections, which directed him to either have his records subpoenaed or to have his attorney contact the department. At trial, trial counsel represented that he "pulled [Brooks's] entire prison record," which consisted of approximately 4,000 double sided pages. However, "[i]t did not reveal the information [ ] Brooks thought it did," namely a conspiracy by the Department of Corrections to fabricate charges against Brooks and keep him in jail. Trial counsel also had his investigator interview personnel at the Department of Corrections, but "none of those was willing to say what [ ] Brooks thought they were going to say." Because the record shows Brooks received his entire prison record, there is no merit to his contention that the trial court denied his request for an in-camera review of the documents.

Brooks also summarily asserts that the trial court refused to permit him to call other trial witnesses. Again, Brooks does not offer any specific details as to which other witnesses he would have called. Furthermore, there is nothing in the record to show that the trial court refused Brooks's request to call any witnesses. In fact, the

32

trial court clearly indicated to trial counsel that "I don't tell you [which witnesses] to call." Thus, this contention is without merit.

8. Brooks states that he that he "was denied his right to arraignment." An arraignment is for the trial court to take the plea of the defendant, and "[i]n those cases in which a plea of not guilty is entered, the court shall set the case down for trial at such time as shall be determined by the court." OCGA § 17-7-91 (b). The record shows that Brooks was indicted on January 7, 2016. His first trial counsel was appointed on May 3, 2016. Counsel appeared at the arraignment on June 6, 2016, waived formal arraignment, and entered a plea of not guilty on Brooks's behalf. At the arraignment, the trial court entered a scheduling order detailing future court dates in the proceeding. On appeal, Brooks contends that his right to due process under the Fourteenth Amendment of the U. S. Constitution was violated by first trial counsel's waiver of formal arraignment without Brooks's presence. However, Brooks again fails to support his allegation with case cites or show how this occurrence impacted his convictions. See *Harris v. State*, 324 Ga. App. 411, 415-416 (4) (b) (750 SE2d

721) (2013) ("In order to have reversible error, there must be harm as well as error.") (citation and punctuation omitted).[20]

9. Brooks contends that he was denied a "pre-indictment [commitment] hearing," alleging that he was "indicted before he was arrested in turn losing all of his due process rights." We find no error.

After Brooks was indicted on January 7, 2016, the trial court entered a production order on April 11, 2016, to have Brooks brought to Cobb County on May 2, 2016, to face the instant charges. Brooks was then formally arrested on the grand jury warrant on April 28, 2016, when he was booked into the Cobb County jail. Because Brooks already was under indictment, the need for a preliminary commitment hearing was moot. See *Jackson v. State*, 225 Ga. 39, 42-43 (1) (165 SE2d 711) (1969) ("[T]he purpose of a commitment hearing is simply to determine whether there is probable cause to believe the accused guilty of the crime charged, and if so, to bind him over for indictment by the grand jury."); see also *State v. Ruff*, 176 Ga. App. 303, 304 (335 SE2d 687) (1985) ("[A] preliminary hearing is not a

---

[20] The day after his arraignment, June 7, Brooks appeared before the trial court on his pro se statutory speedy trial demand. At this hearing, Brooks requested that first trial counsel be removed from the case due to a conflict of interest, but he did not object to counsel's actions at the arraignment hearing the day before.

required step in a felony prosecution and once an indictment is obtained there is no judicial oversight or review of the decision to prosecute because of any failure to hold a commitment hearing.") (citation and punctuation omitted).

10. Brooks argues that he received ineffective assistance of counsel. To prevail on this claim, Brooks "must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance." *Brewer v. State*, 301 Ga. 819, 821 (3) (804 SE2d 410) (2017) (citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)). If an appellant fails to satisfy either prong of this test, we need not examine the other prong. *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

> (W)hile other counsel, had they represented [Brooks], may have exercised different judgment, the fact that trial counsel chose to try the case in the manner in which it was tried, and made certain difficult decisions regarding the defense tactics to be employed with which [Brooks] . . . [later disagreed], does not require a finding that the representation below was so inadequate as to amount to a denial of effective assistance of counsel.

*Reed v. State*, 285 Ga. 64, 66-67 (6) (673 SE2d 246) (2009) (citations and punctuation omitted). Rather, to show deficient performance, "[Brooks] must

35

demonstrate that counsel's performance was not reasonable under the circumstances confronting counsel at the time, without resorting to hindsight." *Belton v. State*, 270 Ga. 671, 673 (3) (512 SE2d 614) (1999) (citation and punctuation omitted). In reviewing counsel's performance on appeal, "we must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Hardin v. State*, 344 Ga. App. 378, 381 (1) (810 SE2d 602) (2018) (citation and punctuation omitted).

Brooks lists four different attorneys as being ineffective in his enumeration of errors, but his arguments in the body of his brief relate solely to the actions of his first trial counsel and trial counsel, neither of whom testified at the motion for new trial hearing. See *Bufford v. State*, 320 Ga. App. 123, 125 (3) (739 SE2d 421) (2013) ("When trial counsel does not testify at the motion for new trial hearing, the defendant has an extremely difficult task to overcome the presumption" of reasonable professional assistance.) (citation and punctuation omitted).

(a) First Trial Counsel

Brooks argues that first trial counsel rendered ineffective assistance by failing to: (1) file either a statutory or constitutional speedy trial demand; (2) file a demand for a preliminary hearing; (3) file a demurrer to the indictment, which Brooks

36

contends was void on its face; (4) file a plea in bar based on the expiration of the statute of limitation; and (5) notify Brooks of his withdrawal from the case. Importantly, Brooks's contentions about first trial counsel amount to no more than a list of short, vague, conclusory statements. Suffice it to say, merely alleging that counsel provided ineffective assistance, without more, "is insufficient to establish a claim of ineffective assistance of counsel." *Tyner v. State*, 313 Ga. App. 557, 565 (6) (b) (722 SE2d 177) (2012) (citation and punctuation omitted); see also *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014) (holding that defendant abandoned majority of his ineffective assistance claims by making only conclusory arguments and failing to support such argument with citations to authority). In any event, each of Brooks's contentions about first trial counsel fails as explained below.

(i) Brooks alleges that first trial counsel was ineffective for failing to file either a statutory or constitutional speedy trial demand. After being appointed on May 3, 2016, first trial counsel filed a motion for discovery on May 6, 2016. Brooks then filed a pro se motion for speedy trial and a motion for dismissal and acquittal on May 16, 2016. However, Brooks's pro se motion, while still represented by counsel, was a nullity. See *Bowser v. State*, 362 Ga. App. 181, 183 (867 SE2d 529) (2021) (reiterating the well-established principle that "a criminal defendant in Georgia does

37

not have the right to represent himself and also be represented by an attorney, and pro se filings by represented parties are therefore unauthorized and without effect") (citation and punctuation omitted). Brooks then filed a pro se motion to have first trial counsel removed from the case. First trial counsel withdrew from representation, and trial counsel was then appointed to represent Brooks on August 12, 2016. Trial counsel later filed a motion to dismiss based on a violation of Brooks's constitutional right to a speedy trial, which the trial court denied following a hearing.

Here, Brooks has made no affirmative showing that first trial counsel's failure to seek a speedy trial was not a reasonable trial strategy, nor has he demonstrated that the outcome of trial might have been different if first trial counsel had demanded a speedy trial. See *Jones v. State*, 296 Ga. 561, 569 (6) (769 SE2d 307) (2015) ("Whether to file a demand for speedy trial is usually a matter of trial tactics and strategy, as a delay in bringing the case to trial may work to a defendant's advantage."); *Henderson v. State*, 310 Ga. 231, 243 (3) (a) (850 SE2d 152) (2020) (defendant failed to show prejudice when he did not demonstrate "a reasonable probability that had his counsel filed a proper speedy trial demand, his trial's outcome would have been different") (emphasis omitted). Thus, this claim fails.

38

(ii) Brooks argues that first trial counsel was ineffective for failing to file a demand for a preliminary hearing. However, as noted in Division 9, supra, Brooks was indicted prior to being arrested on the instant charges, which therefore eliminated the need for a preliminary hearing. As a result, Brooks has not shown that first trial counsel was ineffective for failing to file such a demand. See *Cox v. State*, 306 Ga. 736, 741 (2) (b) (832 SE2d 354) (2019) ("it is well settled that trial counsel cannot be ineffective for failing to make a meritless motion").

(iii) Brooks asserts that trial counsel was ineffective for failing to file a demurrer to the indictment, "said indictment being void on its face." However, that is the extent of his argument on this issue. Brooks has failed to illustrate how the indictment was void on its face or what arguments first trial counsel should have raised in a demurrer, and thus, this claim is deemed abandoned. See *Brewer v. State*, 280 Ga. 18, 20 (3) (622 SE2d 348) (2005) (holding that defendant's mere allegations of ineffective assistance were insufficient to prevail on such a claim).

(iv) Brooks alleges that first trial counsel was ineffective for failing to file a plea in bar based upon the expiration of the statute of limitation. As previously stated in Division 4, trial counsel later filed a motion to dismiss the indictment based upon the statute of limitation in June 2017, which the trial court denied. Thus, Brooks

39

cannot show that he was prejudiced by first trial counsel's failure to file a plea in bar on the same grounds.

(v) Finally, Brooks alleges that first trial counsel was ineffective for failing to notify Brooks of his withdrawal from the case. However, Brooks fails to acknowledge that he filed a pro se motion to have first trial counsel removed from the case based on an alleged conflict of interest. Thereafter, the trial court appointed trial counsel on August 12, 2016. As a result, it is unclear how first trial counsel performed deficiently by failing to notify Brooks of his withdrawal, when Brooks himself requested a change in counsel.

(b) Trial Counsel

On appeal, Brooks raises several claims regarding trial counsel's alleged deficient performance, in many instances including nothing more than short, vague, and conclusory statements. Nevertheless, based on our review of the record, Brooks's contentions are without merit.

(i) Brooks states that trial counsel was ineffective for failing "to object to the trial court[']s jury charge." As previously noted in Division 3, Brooks's failure to identify the specific jury charge to which counsel should have lodged an objection renders this claim abandoned.

(ii) We also find no merit to Brooks's assertion that trial counsel rendered ineffective assistance "by failing to object to the judge's request to redact [the] indictment." As outlined in Division 4, the State originally included two separate tolling provisions in the indictment: "person unknown" (OCGA § 17-3-2) and DNA (OCGA § 17-3-1 (d)). The State later conceded that the DNA tolling provision did not apply to the instant crimes, and thus, the State informed the court that it intended to proceed solely under the "person unknown" exception and redacted the indictment accordingly. On the first day of trial, the trial court instructed the parties to make sure they had a correct, redacted indictment, and trial counsel confirmed that the DNA tolling provision paragraph had been removed. Because Brooks has failed to show how the outcome of the trial would have differed if trial counsel had objected to the redaction of a legally unavailable tolling provision in the indictment, his contention is without merit.

(iii) Brooks alleges that trial counsel was ineffective for failing to object to the State's opening statement, in which the prosecutor mentioned the 1988 crimes. As previously noted in Division 5, after the State filed a pretrial motion indicating its intent to introduce Brooks's 1988 convictions for rape and aggravated sodomy, trial counsel objected, but the trial court ultimately admitted the other acts evidence. As

41

a result, the prosecutor was authorized to reference the 1988 convictions. See

*Jennings v. State*, 288 Ga. 120, 122 (4) (702 SE2d 151) (2010) ("a prosecutor's

opening statement must be confined to what he or she expects the evidence to prove

at trial") (citation and punctuation omitted). Because the prosecutor's reference to

Brooks's 1988 convictions was proper, counsel did not perform deficiently in failing

to object to it. See *Cox*, 306 Ga. at 741 (2) (b).

(iv) Brooks alleges that trial counsel rendered ineffective assistance by failing

to object to, and actually stipulating to, State's Exhibits 1 through 6 at a pretrial

hearing held on September 29, 2017. At the hearing, held to consider Brooks's statute

of limitation argument, trial counsel indicated that he had no objection to the six

exhibits, which pertained to police reports for the two crimes at issue here, as well as

the GBI reports notifying the police department of a match to Brooks from DNA

recovered from the two victims' rape kits. On appeal, Brooks fails to offer any

argument as to why trial counsel should have objected to the contested exhibits or

how this altered the outcome of the trial. See *Tyner*, 313 Ga. App. at 565 (6) (b).

(v) Brooks asserts that trial counsel was ineffective for failing to object to L.

G., the concerned citizen, being allowed to sit in the courtroom during trial. During

a pretrial hearing on May 29, 2018, trial counsel referenced L. G. and a phone call she

made in September 2013 to Detective Arrowood, indicating that she had been raped by an unknown assailant around the same time as the crimes in the instant case. This phone call ultimately led the police department to uncover the two unsolved rapes from September 1986 at issue here and to identify Brooks as the perpetrator based on physical evidence recovered from the victims. However, there is no mention of L. G. in the trial transcript, and Brooks fails to show that even if L. G. was present in the courtroom during trial, how this impacted his trial.

(vi) Brooks asserts that trial counsel was ineffective for failing to object to "hearsay and [bolstering] testimony" by Detective Arrowood about a phone call he received from L. G. in September 2013. The record shows that trial counsel did challenge Arrowood's thoroughness in investigating the 1986 incidents on cross-examination. Although trial counsel did not bring up the 2013 phone call, counsel might have had a strategic reason for not wanting to raise this issue in front of the jury. See *Sullivan v. State*, 301 Ga. 37, 41 (2) (c) (799 SE2d 163) (2017) ("a matter such as the cross-examination of a witness is most often grounded in matters of trial tactics and strategy and, in those instances, provides no basis for finding counsel's performance deficient") (citation and punctuation omitted). Further, because Brooks did not call trial counsel as a witness at the hearing on his motion for

43

new trial, or seek more time to procure counsel as a witness, we have no basis to assess counsel's decision to not question the detective about the 2013 phone call or how this would have changed the outcome of the trial.

(vii) Brooks asserts that trial counsel "failed to interview and prepare witnesses and to investigate other lines of defense." But, as previously stated, Brooks did not call trial counsel as a witness at the hearing on his motion for new trial, so we do not know what type of preparation or investigation counsel performed. Brooks also fails to specify what counsel could have discovered with further investigation or how counsel's pretrial preparation was deficient.

(c) Cumulative Error

Finally, Brooks appears to contend that the cumulative effect of the above-listed errors by first trial counsel and trial counsel warrants a new trial. "Although we may now consider whether the cumulative effect of errors requires a new trial, [if], as here there are not multiple errors, there can be no cumulative error." *Williams v. State*, 358 Ga. App. 152, 157 (c) (853 SE2d 383) (2021), citing *State v. Lane*, 308 Ga. 10, 15 (1), 21 (4) (838 SE2d 808) (2020) (applying cumulative error to claims arising from ineffective assistance of counsel but suggesting that cumulative

error requires the occurrence of at least two errors during trial); *Crider v. State*, 356 Ga. App. 36, 50 (4) (846 SE2d 205) (2020).

Based on the foregoing, we affirm the trial court's denial of Brooks's motion for new trial.

*Judgment affirmed. McFadden, P. J., and Land, J., concur.*